### Henderson's Distilled Spirits.

1. Parties have a right to enter into a stipulation waiving a jury in the District Court, and to submit their case to the court upon an agreed statement of facts, independent of any legislative provision on the subject.
2. Where a forfeiture is made absolute by statute a decree of condemnation relates back to the time of the commission of the wrongful acts, and takes effect from that time, and not from the date of the decree. Accordingly where a removal of distilled spirits from the place where distilled, with intent to defraud the United States of the tax thereon, was alleged as a ground for the forfeiture of the spirits, it was *held* that neither the subsequent payment of the taxes nor the fact that the claimant was an innocent purchaser, without notice of the wrongful acts of the antecedent owner, constituted a defence to the charge.
3. A removal of distilled spirits from the place where distilled to a bonded warehouse of the United States, if made to secure the payment of the tax to the government, is a lawful act, but if made with intent to defraud the United States of the tax, the act of removal is illegal, and the spirits removed are subject to forfeiture. A removal of the spirits from the place where distilled to the bonded warehouse is not inconsistent with, and may be a part of a scheme to defraud the United States of the duties

Error to the Circuit Court for the Eastern District of Missouri; the case being thus:

On the 13th July, 1866, Congress passed an act to provide internal revenue,* laying and levying taxes on many hundred products of the country. The act is a long act, having seventy-one sections, and covering seventy-five large and closely-printed pages of the statute-book. The first thirteen sections, which cover fifty-three of these pages, relate to the levying and collecting of taxes on a great variety of things, but not of a tax on spirits. Section 14th thus proceeds:

"That in case *any* goods or commodities for or in respect whereof any tax is or *shall* be imposed, or any materials, uten-

---

* 14 Stat. at Large, 98–173.

sils, or vessels, proper or intended.to be made use of, for or in the making of such goods or commodities, shall be *removed*, or shall be deposited, or concealed in any place *with intent to defraud the United States of such tax*, or any part thereof, all such goods and commodities, and all such materials, utensils, and vessels, respectively, shall be forfeited; and in every such case, and in every case, where any goods or commodities shall be forfeited under this act, or any other act of Congress relating to the internal revenue, all and singular the casks, vessels, cases, or other packages whatsoever, containing, or which shall have contained, such goods or commodities respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited; and every person who shall remove, deposit, or conceal, or be concerned in removing, depositing or concealing any goods or commodities for or in respect whereof any tax is or shall be imposed, with intent to defraud·the United States of such tax or any part thereof, shall be liable to a fine or penalty of ˙not exceeding $500."

The sections from the 21st to the 45th relate to distilled spirits.   The 28th section provides:

"That general bonded warehouses for the storage of spirits or other merchandise allowed by law to be placed in bond, may be established."

And the 45th section enacts:

"That any person who shall remove any distilled spirits from the place where the same are distilled, *otherwise than into a bonded warehouse*, as provided by law, shall be liable to a fine of double the amount of the tax imposed thereon, or to imprisonment for not less than three months.   All distilled spirits so removed, and all distilled spirits found *elsewhere than in a bonded warehouse*, not having been removed from such warehouse according to law, and the tax imposed by law on the same not having been paid, shall be forfeited to the United States, or may, immediately upon discovery, be seized, and after assessment of the tax ·thereon, may be sold by the collector for the tax and expenses of seizure and sale.   And proceedings upon such seizure shall be according to existing provisions of law in relation to dis-

traint, and in conformity with any regulations which shall be made by the Commissioner of Internal Revenue. And the burden of proof shall be upon the claimant of said spirits to show that the requirements of law in regard to the same have been complied with. And any person who shall aid or abet in the removal of distilled spirits from any distillery *otherwise than to a bonded warehouse,* as provided by law, or shall aid in the concealment of such spirits so removed, shall be liable, on conviction thereof, to a fine of not less than $200, or more than $1000, or to imprisonment for not less than three nor more than twelve months. And any person who shall remove, or shall aid or abet in the removal of any distilled spirits from any bonded warehouse, other than is allowed by law, shall be liable to a fine of not more than $1000, or to imprisonment for not less than three nor more than twelve months."

Section 54th provides a fine of $100 and imprisonment not exceeding a year of any one who shall sell, remove, &c., any *fermented* liquor, on which no stamp or a fraudulent one has been affixed.

The act took effect generally from the 1st of August, 1866;* but so far as it changed existing laws relative to distilled and fermented spirits, only from the 1st of September.

The 29th section enacts:

"That there shall be appointed by the Secretary of the Treasury an inspector for every distillery established according to law, who shall take an oath faithfully to perform his duties; and who shall take an account of all the meal and vegetable productions or other substances to be used for the purpose of producing spirits, when put into the mash-tub or otherwise used; and shall inspect, gauge, and prove all the spirits distilled, under such rules and regulations as may be prescribed by the Commissioner of Internal Revenue; and shall take charge of the bonded warehouse established for the distillery in conformity to law; and such warehouse shall be in the joint custody of such inspector and the owner thereof, his agent or superintendent; and when any spirits shall be placed in such warehouse, an entry therefor, in such form as shall be prescribed by regulations, shall immediately be made and signed by the owner of

---

* Section 1

said spirits, and shall have indorsed thereon a certificate of the inspector that the spirits mentioned have been duly inspected and received in said warehouse, and such entry and certificate shall be filed with the collector of the district; and said inspector shall not engage in any other business while employed as an inspector."

With this act in force, the attorney of the United States for the Eastern District of Missouri, filed an information in the District Court there, on the 7th of September, 1868, to enforce a forfeiture of one hundred barrels of distilled spirits. The fourth count of the information was founded on the first of the above two quoted sections; that is to say, upon the 14th section of the statute, and was as follows:

"That the said one hundred barrels of spirits were manufactured at some place within the United States, to the said attorney unknown, and between the 1st day of September, A.D. 1866, and the date of the said seizure, by some person or persons to the said attorney unknown, and were then and there goods and commodities on which a tax was then and there imposed by the provisions of law, and the same were removed from the place where distilled with intent to defraud the United States of such tax, the same being then and there unpaid, contrary to the form of the statutes of the United States in such case made and provided."

One Henderson, of New Orleans, appeared to the monition issued on the information and claimed the spirits as owner. And he filed an answer, putting in issue the material matters alleged in the information, and further alleged that the said spirits "were purchased by him while the same were in a bonded warehouse, and that he, the claimant, paid the tax imposed thereon by law before he removed the same from said bonded warehouse." In answer to the count, the claimant denied that the "spirits were removed from the place where distilled with intent to defraud the United States of any tax being then and there imposed as alleged."

An agreement was filed in the District Court waiving a jury trial, and the case was heard by the judge upon the following facts, agreed to by the parties according to a stipulation filed before the trial:

"1st., That Henderson purchased the spirits while in a bonded warehouse of the United States, at New Orleans, *after the same had been placed therein by the owners of the distillery at which the same were made,* and that he, Henderson, paid to the United States collector the taxes due on the spirits and removed them from the warehouse, according to law, without knowledge on his part at any time before seizure, of any fraud on the part of the distiller, either actual or alleged; that Henderson was a purchaser, innocent and *bonâ fide,* and paid, himself, the tax on the spirits.

"2d. That he shipped the same to St. Louis, and that they were in his constructive possession at the time of seizure.

"3d. That they were manufactured and distilled at a distillery in the first collection district of Louisiana, in May and June, 1868, carried on in the name of Nimrod Johnson, by the use and means of certain boilers, stills, and other vessels of which Johnson was superintendent and owner.

"4th. *That the fourth article* in the *information was true,* but that Henderson subsequently to removal from the distillery and before removal from the bonded warehouse, and before seizure, paid the tax on said spirits, and was a *bonâ fide* and innocent purchaser thereof.

"5th. That he was not a purchaser from the United States, and the United States at no time sold said spirits."

The District Court gave judgment for the claimant and the Circuit Court affirmed the judgment, that court holding that as the overt act alleged, namely, the removal, was rightful, "it was difficult to see how it could have been made to defraud the United States of the tax, and that a mere intent to defraud, formed or existing in the mind of the distiller, which intention had never been executed, or attempted to be, was not made a ground of forfeiture."

The case was now here on error.

*Mr. B. H. Bristow, Solicitor-General, and Mr. C. H. Hill, Assistant Attorney-General, for the United States, plaintiffs in error:*

1. If these spirits were liable to forfeiture under any count of the information, the forfeiture attached at the moment of

the commission of the offence, and can be enforced against the offending property in the hands of an innocent pur- chaser.*

2. The case agreed on admits the truth of the allegations in the fourth count, namely, that the spirits were removed from the distillery "with intent to defraud the United States of said tax, the same being then and there unpaid." It then comes by plain words within the 14th section of the statute.

The fallacy of the reasoning of the Circuit Court was in assuming it to be impossible that one step in an attempt to defraud the government of the tax due upon those spirits could be their removal to a bonded warehouse. But it is notorious that spirits have often been removed to United States bonded warehouses from distilleries in accordance with conspiracies between distillers and warehousemen in order to defraud the government, by having the spirits secretly drawn off from the barrels; and under agreements with the revenue officers to have them released upon worth- less security without payment of the tax.

*Mr. J. A. Garfield, contra:*

In *Bennet* v. *Hunter*,† this court gave its construction of the 4th section of the act of July 7th, 1862,‡ a highly penal statute, in which it is provided, "that the title of, in, and to every piece or parcel of land upon which said tax has not been paid as above provided *shall thereupon become forfeited to* the United States." In construing this statute, the Chief Justice, delivering the opinion of the court, said:

"It must be remembered that the primary object in the act was undoubtedly revenue, . . . . and it seems unreasonable to give to an act considered as a revenue measure a construction

---

* Robert v. Witherhead, 12 Modern, 92 ; Wilkins v. Despard, 5 Term, 112 ; United States v. Grundy, 3 Cranch, 338 ; United States v. 1960 Bags of Coffee, 8 Id. 398 ; Wood v. The United States, 16 Peters, 342 ; Caldwell v. The United States, 8 Howard, 366.

† 9 Wallace, 326.                    ‡ 12 Stat. at Large, 294.

which would defeat the right of the owner to pay the amount assessed, and relieve his land from the lien."

Speaking of the claim set up by the plaintiffs in that case, that forfeiture worked *eo instanti* on the failure of the owner to pay the tax within the required time, the Chief Justice said:

"It is certainly proper to assume that an act of sovereignty so highly penal is not to be inferred from language capable of any milder construction."

This principle of interpretation is applicable to this case.

2. The Circuit Court did not err in holding the spirits were not forfeited under the fourth count in the information. The 14th section, on which the fourth count is based, does not apply to the removal of spirits. That section applies to the removal from the place of manufacture, and to the deposit or concealment of articles named in the *previous* sections of the statute; among which articles liquors are not included. Subsequent sections, it is, which govern them, and the 45th section, which concludes this portion of the statute, provides a special and different penalty for the removal of spirits in violation of the law. Different penalties are provided by section 54th for the unlawful removal of fermented liquors, showing that Congress excepted them from the operation of section 14th; a view strengthened by the fact that the statute generally took effect on one date, but that the provisions relating to distilled and fermented liquors did not take effect till a later one.

Section 45th is, therefore, the law which applies to the allegation in the fourth count of the information. But the forfeiture prescribed in that section applies to the removal of spirits "from the place where the same are manufactured *otherwise than into a bonded warehouse*," and the removal of these spirits was *not* otherwise. It was a bonded warehouse of the United States.

The allegation in the fourth count that the spirits were removed "from the place where distilled, with intent to defraud the United States of the tax," and which allegation

is admitted in the case agreed on to be true—is rendered nugatory by the other, the fact equally admitted, that the removal was made by the distiller himself to a bonded warehouse of the United States. This act was legal, was in pursuance of the statute, was the very course prescribed by the law "to secure the payment of the tax." No conspiracy—which is what, in truth, the opposing counsel assume to have existed—is alleged in the information, nor in the facts agreed on. The contrary appears from the case agreed on. If it did not, all the proceedings required of the inspector by the 29th section*—numerous and stringent provisions—must be assumed in the absence of any proof, or even allegation, to the contrary to have taken place. And the fact that when Henderson purchased the spirits he paid the full amount of the tax, and received the collector's certificate of such payment, is conclusive that there was no conspiracy.

The government by accepting and retaining the taxes paid to it by the claimant, is estopped to say the property all the time belonged to it, by reason of previous forfeited title by the vendor or the claimant. Henderson had every possible assurance that he had acquired a perfect title to the property he purchased. If it now be declared forfeited, he loses both the tax and the property, by no fault or negligence on his part. In civil actions, and in all cases like this, which involve a mere right to property, estoppel binds the government as it does individuals.†

*Reply :* Section 45th is widely different from section 14th. The gist of section 14th is the intent with which the spirits are removed; forfeiture only taking place where they are removed, deposited, or concealed in any place with intent to defraud the United States. In section 45th the intent with which the removal is made is immaterial, if they are removed elsewhere than to a bonded warehouse. Thus an information can be founded on section 45th, however innocent may

---

* Quoted *supra*, pp. 46, 47.

† Lindsey *v.* Hawes et al., 2 Black, 554; Alviso *v.* United States, 8 Wallace, 337.

have been the intention of the parties; but, when founded on section 14th, the intent to defraud the government becomes essential. The fact that an information for fraudulently removing spirits elsewhere than to a bonded warehouse may be founded either on section 14th or section 45th, does not show any conflict between the two sections, or that the one limits the other. Such cumulative remedies are very often provided in revenue laws.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Distilled spirits, upon which no tax had been paid according to law, were, by the thirty-second section of the act of the thirteenth of July, 1866, subject to a tax of two dollars on each and every proof gallon, to be paid by the distiller, owner, or any person having possession thereof, and the same section provided that the tax shall be a lien on the spirits distilled, and on the distillery used for distilling the same, with the stills, vessels, fixtures, and tools therein, &c.† Express provision is also made by the fourteenth section of that act, that all goods or commodities, for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods or commodities, in case they shall be removed or shall be deposited or concealed in any place with intent to defraud the United States of such tax, or any part thereof, shall be forfeited.‡ Certain alterations are made in each of those provisions by the fourteenth section of the act of the second of March, 1867, but the alterations are not material to the present case, as the same section provides that the new provision shall not exclude any other remedy or proceeding provided by law, which beyond all doubt leaves in full operation the fourteenth section of the prior act.§

Regular seizure of the one hundred barrels of distilled spirits in question was made on the first day of September,

---

\* The Distilled Spirits, 11 Wallace, 356, 364, 365.

† 14 Stat. at Large, 157.          ‡ Ib. 151.          § Ib. 481.

1868, by the collector of the district, as alleged in the information, and the record shows that the information was duly filed by the district attorney on the seventh of the same month, in the District Court of the United States for the district where the seizure was made. Being a seizure on land, the claimant was entitled to a trial by jury, but he appeared and the parties entered into a stipulation waiving a jury and submitted the case to the court upon an agreed statement of facts, as they had a right to do, even before any legislative provision was enacted for waiving a jury by a written stipulation.* Pursuant to that stipulation the parties were heard, and the District Court dismissed the information and rendered judgment for the respondent. Exceptions were duly taken by the district attorney and he sued out a writ of error and removed the cause into the Circuit Court, where the judgment rendered by the District Court was affirmed, and the United States thereupon sued out a writ of error to the Circuit Court and removed the cause into this court for re-examination.

Seizure of the spirits was made, as before explained, by the collector of internal revenue for the district, and it is alleged in the information that the collector still holds the same in his possession and custody as forfeited to the United States, under the provisions in the act to amend the existing laws relating to internal revenue. Six articles, each charging a forfeiture of the spirits in question, are contained in the information, but in the view of the case taken by the court it will only be necessary to examine the fourth in the series, which is as follows:

That the said one hundred barrels of spirits were manufactured at some place within the United States to said attorney unknown, and between the first day of September, 1866, and the date of said seizure, by some person or persons to said attorney also unknown, and were then and there goods and commodities on which a tax was then and there

* Suydam v. Williamson, 20 Howard, 434; United States v. Eliason, 16 Peters, 291; Stimpson v. Railroad, 10 Howard, 329; Campbell v. Boyreau, 21 Id. 224.

imposed by the provisions of law, and the same were removed from the place where distilled, with intent to defraud the United States of such tax, the same being then and there unpaid, contrary to the form of the statutes of the said United States in such case made and provided.

Seasonable claim in due form was made for the spirits by the defendant, and he appeared and filed an answer, denying all the material allegations of the information, and tendered an issue to the country, which was joined by the United States. Apart from that, he also answered each article separately, and in respect to the fourth article he denied that the spirits in question were removed from the place where distilled with intent to defraud the United States of any tax then and there imposed, as alleged in the information.

Evidently the answer was precisely equivalent to the general issue, and made it incumbent upon the United States to prove the charge as alleged, and the effect of the stipulation submitting the case to the court was to substitute the court for the jury as the tribunal to determine the issue of fact presented in the pleadings. Had the stipulation contained nothing further, it is clear that the evidence on the one side and the other must have been introduced to the court substantially as provided in the recent act of Congress upon that subject, but the parties went further and stipulated in writing as to what the facts in the case were, in which stipulation it is agreed that the fourth article in the information is true, and it is insisted by the United States that that stipulation is equivalent to a confession of guilt, and that it entitles the United States to judgment, and the court would certainly be of the same opinion if that admission was unaccompanied by what follows in the stipulation in the same connection.

Standing alone, it is an admission that the charge as contained in the fourth article of the information is true, but it must be read in connection with what follows as a part of the same stipulation, and the question is whether the qualification annexed to the admission that the fourth article of the information is true, changes the aspect of the evidence

and entitles the defendant to the judgment rendered in his favor by the subordinate courts.

Appended to the admission that the fourth article in the information is true, is the statement that the defendant, subsequently to the removal of the spirits from the distillery, and before their removal from the bonded warehouse, and before the seizure, "paid the tax on said spirits, and that he was a *bonâ fide* and innocent purchaser;" and the question is whether that statement, appended as it is to the admission, qualifies the language of the admission in such a way that the admission does not establish the truth of the charge contained in the fourth article of the information.

Due weight must also be given to certain other facts stated in the stipulation in determining the question whether the judgment for the defendant was correct or incorrect. He was not the purchaser from the United States, nor have the United States ever sold the spirits in question, but the agreed statement also shows that he purchased the spirits while they were in a bonded warehouse in New Orleans, after the same had been placed therein by the owner of the distillery at which the same were distilled; that he paid the tax due on the spirits to the collector, and removed the same from the warehouse according to law, without any knowledge on his part, at any time before the seizure, of any fraud, either actual or alleged, on the part of the distiller; that the spirits were manufactured and distilled at a certain distillery in that district, in the months of May and June, prior to the seizure, by the person therein named, by the use and means of certain boilers, stills, and other vessels of which the distiller was superintendent and owner, and the parties agree to the effect that all the acts averred in the fifth and sixth articles of the information as having been done in respect to the spirits in question by some person unknown are true, when the averments are applied to the person named in the agreed statement as the manufacturer and distiller of the said spirits.

Four material ingredients are involved in the charge contained in the fourth article of the information: (1.) That the

spirits were manufactured at some place within the United States, between the day therein named and the date of the seizure. (2.) That the spirits were then and there goods and commodities on which a tax was imposed by some provision of law then in force. (3.) That the spirits were removed from the place where distilled with intent to defraud the United States of such tax. (4.) That the tax was unpaid at the time the spirits were so removed, with such fraudulent intent.

Beyond all doubt the admission that the fourth article is true is a conclusive admission that each and every one of the well-pleaded allegations which it contains are also true, which, standing alone, would certainly be a confession on the record that the property is subject to forfeiture, unless it can be shown that the fourth article in the information is insufficient in law to warrant a judgment in favor of the United States.

Viewed in that light, as the admission must be, the next question is whether the statement appended to the admission is sufficient to save the property from condemnation in the possession of the defendant. Properly analyzed the statement appended to the admission contains two averments in avoidance of the consequences which would otherwise follow from the admitted acts of the antecedent owner: (1.) That the defendant paid the tax subsequent to the removal of the spirits from the distillery and before they were removed from the bonded warehouse and before the seizure by the collector. (2.) That he was a *bonâ fide* and innocent purchaser, without notice that the spirits were forfeited as alleged in that article of the information.

Where the forfeiture is made absolute by statute the decree of condemnation when entered relates back to the time of the commission of the wrongful acts, and takes date from the wrongful acts and not from the date of the sentence or decree.* Subsequent payment of the duties, therefore, is

---

* Roberts *v.* Witherall, 1 Salkeld, 223; Robert *v.* Witherhead, 12 Modern, 92; United States *v.* Bags of Coffee, 8 Cranch, 398; The Brigantine Mars, 1b. 417; Gelston *v.* Hoyt, 3 Wheaton, 311; Caldwell *v.* United States, 8

no defence to an information for a forfeiture founded upon antecedent wrongful acts, as the effect of such wrongful acts, where the forfeiture is made absolute by statute, is to divest the owner of all property in the goods seized and to vest the title to the same in the United States, in case a prosecution ensues, and a decree of condemnation follows, as the decree of condemnation when entered by a court of competent jurisdiction relates back to the date of the wrongful acts as alleged and proved at the trial or in the hearing of the cause.* Repeated decisions of this court have established that rule in all cases where the forfeiture is made absolute by the act of Congress, and it necessarily follows that neither the subsequent payment of the duties nor the fact that the defendant is an innocent purchaser, without notice of the wrongful acts of the antecedent owner, constitutes any defence to the charge contained in the fourth article of the information.† Many such adjudged cases are to be found in the reported decisions of this court, and it must be admitted that they establish the rule beyond all doubt, that the forfeiture becomes absolute at the commission of the prohibited acts, and that the title from that moment vests in the United States in all cases where the statute in terms denounces the forfeiture of the property as a penalty for a violation of law, without giving any alternative remedy, or prescribing any substitute for the forfeiture, or allowing any exceptions to its enforcement, or employing in the enactment any language showing a different intent; and that in all such cases it is not in the power of the offender or former owner to defeat the forfeiture by any subsequent transfer of the property even to a *bonâ fide* purchaser for value without notice of the wrongful acts done and committed by the former owner. Established as that rule has been by the decisions of this court for more than half a century, it is insisted that it should be applied in the case before the court, and it is

---

Howard, 381; United States *v.* Grundy, 3 Cranch, 338; Wood *v.* United States, 16 Peters, 342; Clifton *v.* United States, 4 Howard, 248.

* Fontaine *v.* Ins. Co., 11 Johnson, 293; Kennedy *v.* Strong, 14 Id. **128.**

† Wilkins *v.* Despard, 5 Term, 112.

difficult to see any reason for rejecting the proposition, as the words of the act under which the fourth article of the information is drawn denounce the forfeiture of the property in terms as absolute and unqualified as any which can be chosen in our language.* Goods and commodities falling within that provision, it is enacted, *shall be forfeited* in case they shall be removed with intent to defraud the United States of such tax, or any part thereof, and the language denouncing the forfeiture is explicit and absolute and without any qualification whatever. Compare the language of the act of Congress with the language employed in the fourth article of the information and it will be seen that the charge against the spirits is preferred in the same language as that employed in the act of Congress denouncing the forfeiture, as the fourth article alleges that the spirits in question were then and there goods and commodities on which a tax was then and there imposed by the provisions of law, and that the same were removed from the place where distilled with intent to defraud the United States of such tax, the same being then and there unpaid; and the admission set forth in the agreed statement is that the fourth article of the information is true, which is a direct confession that the prohibited acts charged in that article were done and committed at the time and place and by the person and in the manner therein alleged.

Concede all that and it is clear that the United States are entitled to judgment, if it be true that the forfeiture relates back to the date of the wrongful acts charged in the information. Escape from that conclusion, it would seem, is impossible, if it be admitted that the fourth article of the information sets forth a good cause of forfeiture, and it is clear that the affirmative of that proposition must be admitted, unless it be affirmed that the 14th section of the act of Congress, on which it is drawn, does not provide for such a forfeiture, under the circumstances therein described.

---

* United States *v* Bags of Coffee, 8 Cranch, 398; United States *v.* Grundy 2 Id. 338.

Such a proposition, whether so intended or not, is precisely equivalent to a demurrer to the fourth article of the information or to a motion in arrest of judgment after verdict; and if so, then it follows, as shown by all the authorities upon the subject, that everything well pleaded in the fourth article of the information. must be taken as true, which is the exact admission contained in the agreed statement. Nothing can be more certain in legal investigation than that the decree must have been for the United States if the claimant had demurred to the fourth article of the information, unless it can be held that the act of Congress denouncing the forfeiture is unconstitutional, as the article in question embodies the exact language of that provision, and it is equally certain that a motion in arrest of judgment would also have been unavailing for the same reason, and also because the validity of the act of Congress is beyond all doubt.

Congress possesses the power to levy taxes, duties, imposts, and excises, and it is as clear that Congress may enact penalties and forfeitures for the violation of such laws as it is that Congress may levy the taxes or duties or pass laws for their collection, safe-keeping, and disbursement.

Section fourteen, it is admitted, is broad enough in its terms to embrace the removal of spirits, on which there is a tax, from the place where distilled, with intent to defraud the United States of the tax, but it is suggested that another section of the same act requires that spirits, when removed from the place where distilled, shall be deposited in a bonded warehouse, and that the penalty imposed for a violation of that requirement is different from the penalty imposed by the fourteenth section of the act, and it must be admitted that the suggestion is correct, but it is impossible to see in what respect the suggestion tends to support the views of the defendant in the present case.

Suggestion is also made that it is not an illegal act to remove spirits from the place where distilled to a bonded warehouse, and that also is true, but the corollary attempted to be drawn from the two suggestions is a *non-sequitur*, and

cannot be sustained, which is that the charge that the spirits were removed from the place where distilled, with intent to defraud the United States, cannot be true if it appears that the spirits were removed from the distillery to a bonded warehouse, as the removal of spirits from the place where distilled to a bonded warehouse is authorized by law. Undoubtedly such a removal of spirits from the place where distilled to a bonded warehouse, if made to secure the payment of the tax to the government, is a lawful act, but it is equally clear, if the removal is made even to a bonded warehouse to defraud the United States of the tax, that the act of removal is illegal, and that the spirits removed are forfeited.

Both of these suggestions, however, are founded upon the assumed theory that the record shows that the only removal of the spirits alleged or proved was a removal from the place where distilled to a bonded warehouse, but that assumption is wholly unsupported either by the charge contained in the fourth article of the information or by the admission that the fourth article is true, as exhibited in the agreed statement. On the contrary, the fourth article of the information alleges that the spirits were removed from the place where distilled, with intent to defraud the United States of the tax, without any specification as to the place to which the same were removed, or where they were deposited; nor is that omission any objection to the form of the charge, as that article of the information follows substantially the language of the fourteenth section of the act of Congress on which it is drawn.

Tested by the charge, as made in that article, and the admission applicable to it, as exhibited in the agreed statement, as the question must be, and it is clear that the spirits may have been removed elsewhere than to a bonded warehouse before they were placed in that depository by the owner and distiller. Such certainly would be the legal conclusion if the defendant had demurred to the information, and the court is of the opinion that the same conclusion must follow from the admission that the fourth article of the

information is true, as the admission is expressed in the agreed statement.

Henderson, the claimant, purchased the spirits while they were in the bonded warehouse and after they had been deposited therein by the owner of the distillery where the spirits were manufactured, and having made the purchase without notice that any fraud had been practiced by the distiller, and having paid the tax before the spirits were removed from the bonded warehouse, it is insisted by his counsel, in every possible form of argument, that his title is perfect and that the spirits are not liable to forfeiture, but the decisive answer to all that is the one already given, that the forfeiture relates back to the unlawful or wrongful acts of the antecedent owner, and that he cannot by any subsequent transfer of the property defeat the title of the United States, as settled by a series of decisions which, if traced to their source, have their origin in the early history of the common law.*

Rules of decision of such long standing and so necessary to protect the public revenue cannot be changed, nor can it be admitted that the charge contained in the fourth article of the information may not be sustained, even if it appears that the only removal of the spirits made by the distiller was to the bonded warehouse, as assumed in argument by the defendant.†

Unquestionably a removal of distilled spirits from the place where distilled to such a depository, if made to secure the payment of the tax, is a lawful act, but it is equally clear that if it is made with intent to defraud the United States of the tax it is an unlawful act, and subjects the spirits to forfeiture.

Grant that the removal was rightful, as assumed by the circuit judge, and the conclusion which he adopted would follow, but it cannot be assumed in this case that the re-

---

* 4 Bacon's Abridgment, by Bouvier, 346; Plowden, 488, b Co. Litt. 25; 1 Chitty's Criminal Law, 727.

† Clarke v. Insurance Co., 1 Story, 109.

moval was rightful, as the charge in the fourth article of the information is that it was made with intent to defraud the United States of the tax, and the admission in the agreed statement is that the fourth article of the information is true, which shows as fully as it can be shown that the United States are entitled to a decree of condemnation, unless it can be established that the fraudulent intent there charged could not under any circumstances be carried into effect by such a removal as that alleged in the fourth article of the information and admitted in the agreed statement.

Suppose it be true, as assumed in argument, that the only attempt made to execute the unlawful intent charged was the removal of the spirits from the place where distilled to the bonded warehouse, still it would by no means necessarily follow, as is supposed, that the removal was a legal act, as the removal, though to a bonded warehouse, may nevertheless have been made for the express purpose to defraud the United States of the tax, and if so, then the removal was indubitably an illegal act, and the spirits are properly subject to forfeiture as charged in the information.

Cases have arisen, as the records of this court show, where the removal to the bonded warehouse was made as a part of a preconcerted arrangement with other parties to avoid the payment of the tax, and it would not be difficult to suppose other cases where the removal of the spirits from the place where distilled to the bonded warehouse would be a necessary part of a well-devised scheme to defraud the United States by delivering the spirits to purchasers without the payment of the duties.*

Inspectors of spirits are required to be appointed by the Secretary of the Treasury, and all distilled spirits, before being removed from the distillery, are required to be inspected and gauged by a general inspector, whose duty it is to mark the vessels or packages in the manner required by law, and penalties are prescribed and imposed in case the

---

* Distilled Spirits, 11 Wallace, 364.

spirits are removed from the place where distilled without a compliance with those requirements.*

Persons distilling spirits, and the owners of stills used for the purpose of distilling spirits, are required to keep books and to make certain entries therein, and to render certain accounts to assessors, and if they do not comply with those requirements they also are subject to certain penalties for the neglect.†

Bonded warehouses are established for the storage of spirits to be placed therein to secure the payment of the duties imposed by law, and the provision is that if any person shall ship, transport, or remove any spirits under any other than the proper mark or brand, known to the trade as designating the kind and quality of the contents of the casks or packages containing the same, or cause the same to be done, he shall forfeit the same, and shall, on conviction thereof, be subject to and pay a fine of five hundred dollars.‡

Cautious merchants, in consequence of those regulations, and many others equally stringent, are often disinclined to purchase spirits at the place where distilled lest they should be subject to forfeiture, if equally favorable terms are offered by other parties who have made deposits in the bonded warehouses. Distillers, therefore, intending to evade the payment of the duties may find it a most effectual way to accomplish their unlawful designs, in case they can, by bribery or otherwise, secure the co-operation of the inspector, storekeeper, or collector, to remove the spirits to a bonded warehouse, as spirits placed in that depository are less subject to suspicion and sell more readily than before they were removed from the place where distilled.

Spirits placed in such a depository sell more readily than before they were removed, because they are regarded as less likely to be subject to forfeiture than while they remained in the distillery, but it is clear that the theory that an intent to defraud the United States cannot be predicated of a removal of spirits from the place where distilled to a bonded ware-

---

* 14 Stat. at Large, 156; 14 Id. 481.   † Ib. 157.   ‡ Ib. 155, 156.

house is an erroneous theory, as it is manifest that the dishonest distiller, if he can obtain the assistance of the inspector, storekeeper, or collector, as a partner or agent, will find such a removal an essential step in almost every scheme which he may devise to accomplish his wicked designs.

Viewed in any light, therefore, the court is of the opinion that the judgment of the Circuit Court is erroneous.

Questions are also presented in the record under the fifth and sixth articles of the information, but the court having come to the conclusion that the United States are entitled to judgment upon the fourth article of the information, do not deem it necessary to express any opinion as to the other questions.

JUDGMENT REVERSED and the cause remanded with instructions to render

JUDGMENT FOR THE UNITED STATES.

Mr. Justice FIELD, with whom concurred the CHIEF JUSTICE and Mr. Justice MILLER, dissenting.

I am unable to concur in the judgment of the majority of the court, and will briefly state the grounds of my dissent.

The proceeding is an information for the forfeiture of one hundred barrels of distilled spirits. The forfeiture is not decreed, on the ground that the government has not received the taxes levied on the spirits, for it is admitted that these have been paid; nor on the ground that the claimant has committed or participated in the commission of any fraud in the acquisition of the property, for it is conceded that he purchased the spirits in good faith without knowledge of any defect or taint in his vendor's title. Nor is the forfeiture inflicted for any violation of law, in act or deed, on the part of the distiller of whom the claimant purchased. He only removed the spirits from the place of their manufacture to the bonded warehouse of the United States, and that was a lawful, and not an unlawful act. The forfeiture is decreed because the former owner, in removing the spirits to the bonded warehouse, intended at the time to defraud the gov-

ernment of the tax thereon—an intent, however, which he never attempted to carry into execution.

We thus have this singular and, I venture to say, unprecedented fact, in the history of judicial decisions in this country, that the property of a citizen honestly acquired, without suspicion of wrong in his vendor, is forfeited and taken from him because such vendor, at some period whilst owning the property, conceived the intent to defraud the government of the tax thereon, although such intent was never developed in action, and for the execution of which no step was ever taken.

The presumption is that the majority of the court are right in this decision, and that the minority are mistaken in their views of the law governing the case. It is, therefore, with diffidence that I venture to dissent from their judgment, a diffidence which is greatly augmented by the declaration of the majority, that it is impossible to escape the conclusion which they have reached.

But for this conclusion I should have supposed that it would have been impossible, at this day and in this age, and in our country, to obtain a decree confiscating the property of a citizen for anything which a former owner of the property may have intended to do, but never did, with respect to it. I should have said that the intentions of the mind, lying dormant in the brain, had long since ceased to be subjects for which legislatures prescribed punishment. Against threatened injuries to person or property remedies are provided; and this, it is believed, is the extent to which legislation can legitimately go with respect to intentions, however fraudulent or wicked, so long as they remain undeveloped by action. Penalties and forfeitures are not inflicted at this day in any civilized and free government for the motives with which lawful acts are done.

The inability to ascertain, with certainty, the intentions of a party, except as they are exhibited in his acts, and the injustice which must necessarily follow any attempt to inflict punishment for them, except as they are thus exhibited, have hitherto, in this country, prevented any legislation of

that character, unless such legislation is found in the present revenue act of Congress. The injustice in its operation of such legislation, assuming such legislation to exist, could not be more strikingly illustrated than in the present case. But I am not prepared to admit, notwithstanding the cogency and persuasiveness of the able and elaborate argument in the opinion of the majority, that there is any such legislation on our statute-book.

The act of Congress under which this proceeding was taken provides, in its twenty-eighth section,\* for the establishment of bonded warehouses for the storage of spirits " to secure the payment of the internal revenue tax thereon," and, in its forty-fifth section, prohibits " the removal of distilled spirits† from the place where the same are distilled *otherwise than into a bonded warehouse,* as provided by law," imposing penalties upon parties making such removal, and declaring that " the distilled spirits so removed" shall be forfeited to the United States.

The same act declares, in its fourteenth section,‡ that if any goods or commodities, upon which a tax is imposed, or the materials, utensils, or vessels, proper or intended to be used in their manufacture, are removed, deposited, or concealed in any place, "with intent to defraud the United States of such tax, or any part thereof," they shall be forfeited to the United States. And it is upon the language of this section, as applied to the facts admitted by the parties, that the majority of the court found the decree of forfeiture.

The language is undoubtedly broad enough to cover any removal of spirits, upon which a tax has been imposed, from their place of manufacture; and, if it has any reference to articles of that character, it must be construed in connection with the language of the forty-fifth section. And the evident meaning of the two sections, if they are construed together, is, that the removal, for which a forfeiture is declared, is a removal to some other place than a bonded

---

\* 14 Stat. at Large, 155.          † Ib. 163.          ‡ Ib. 151.

warehouse of the United States. Of a removal to such warehouse it is difficult to perceive how an intent to defraud the government can be, in truth, affirmed. It would be as reasonable to declare that a debtor had an intention to defraud his creditor when he placed in the hands of the latter the money to pay his demand. It is plain, in my judgment, or rather I should have said it was plain but for the opinion of the majority, that the removal of spirits forbidden by that section is a removal to some place beyond the reach of the government, or where the government would be in some way embarrassed or obstructed in the collection of its tax. It seems to me a strange application of the prohibition to make it cover a removal of spirits to a warehouse specially provided by the government for their reception, and where they are placed in the possession and custody of the officers of the United States.

But I am unable to convince myself that the fourteenth section has any reference whatever to the removal of distilled spirits. The previous sections of the act relate to taxes on a great variety of articles, of several hundred different kinds, and it does not include distilled spirits among them. The removal mentioned in the fourteenth section would seem, therefore, to apply to the removal from the place of their manufacture of the articles thus previously designated, or at least of articles mentioned in the statute, for the removal of which no different penalties are specifically prescribed.

The sections of the act, from the twenty-first to the forty-fifth inclusive, relate to the tax on distilled spirits, and contain numerous provisions applicable only to them. The punishment they prescribe for the removal of the spirits from the place of their manufacture, otherwise than to a bonded warehouse, in addition to their forfeiture, is different from the penalty prescribed by the fourteenth section, for the like removal of other goods. This fact would seem to be conclusive, if other reasons were wanting, that the fourteenth section has no reference to the removal of distilled spirits. The special provisions respecting them should ex-

cept them, according to all established canons of interpretation, from the general language of that section.

"That a law," says Chief Justice Marshall, ".is the best expositor of itself, that every part of an act is to be taken into view for the purpose of discovering the mind of the legislature, and that the details of one part may contain regulations restricting the extent of general expressions used in another part of the same act, are among those plain rules laid down by common sense for the exposition of statutes, which have been uniformly acknowledged."[*]

And it is laid down in the elementary treatises that where a general intention is expressed in one part of a statute, and a particular intention in another part, inconsistent with the general intention, the particular intention is to be regarded as an exception.[†]

The suggestion by the counsel of the government, that a removal of distilled spirits to a bonded warehouse, although the law provides for such removal as a means for securing the payment of the tax, may be made with intent to defraud the United States of such tax, inasmuch as there may be an agreement between distillers and warehousemen to have the spirits secretly drawn out from the vessels, or to have the spirits released upon insufficient security, does not strike me as entitled to any consideration in this case. Conspiracies there undoubtedly may be with officers of the United States to defraud the government, but in the absence of any proof tending to establish such a conspiracy, the court would not be justified in imagining its existence for the purpose of working a forfeiture of goods in the hands of an innocent party. It would rather indulge the more rational and just presumption that all the officers of the government did their duty, until at least some evidence to the contrary was produced.

This is a case of great hardship and manifest injustice. The claimant found the spirits in a bonded warehouse of the

---

[*] Pennington v. Coxe, 2 Cranch, 52.

[†] Potter's Dwarris on Statutes, 110; Sedgwick on Statutes, 423.

government, in custody of the officers of the United States. He paid to them the tax due on the goods, and he paid to the owner their value. He had no suspicions that his vendor ever entertained any intention to defraud the government of the tax levied on them, and if he ever had such suspicions he might well have supposed that his vendor had repented of his intention, when he delivered the property to the keeping of the officers of the United States.

The government through its officers took from the innocent purchaser the duties upon the goods, thus saying to him that the goods then belonged to the distiller who placed them in the warehouse. The government now declares through its officers that these goods all the time belonged to it by reason of the previous forfeiture, and thus the honest claimant loses both the taxes and the goods, or at least is left to the doubtful chances of obtaining the former by petition to the government, and the latter by action against his vendor.

The object of the act of Congress, under which the forfeiture is declared, is to raise revenue; and it seems to me that the severe construction in favor of forfeitures in the hands of innocent parties, given by the majority of the court, must have a tendency to defeat this object; for it will scarcely be possible for any one to purchase merchandise with safety when it may be seized and forfeited in his possession for reasons such as are assigned in this case.

I am of the opinion that the judgment of the court below should be affirmed.