NORTH BEACH AMUSEMENT COM-
PANY, Inc., a Body Corporate,
Claimant, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7225.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 8, 1956.

Decided Jan. 7, 1957.

Eldridge Hood Young, Baltimore, Md., for appellant.

Walter E. Black, Jr., U. S. Atty., Baltimore, Md., for appellee.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

The subject matter of this appeal is a number of gambling devices of the slot machine variety, seized in Prince George's County, Maryland, under a libel instituted by the Government. The appellant intervened as claimant and, the facts being undisputed, the Government's motion for summary judgment was granted. Thereupon, the Marshal was ordered to deliver the machines to the Attorney General for destruction, and this appeal followed.

Title 15 U.S.C. § 1172, 15 U.S.C.A. § 1172, enacted on January 2, 1951, makes it "unlawful knowingly to transport any gambling device to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession," but exempts from its provisions transportation into any state or subdivision thereof "which has enacted a law providing for the exemption of such State [or subdivision] from the provisions of this section * * *." By Section 1177, any gambling device transported or used in violation of the Act shall be seized and forfeited to the United States. The statute is popularly known as the Johnson Act.

The appellant operates slot machines in its amusement park in Calvert County, Maryland, which county is exempt from the Maryland statutory prohibition against use of such gambling devices. Maryland Code of Public Local Laws, Art. 5, Secs. 176–177C. On March 4, 1954, forty-two such machines were delivered to the farm of one of its officers in Prince George's County, Maryland. Concededly, this county (unlike Calvert County) is subject to the Maryland statute prohibiting the use of gambling devices. Md.Code Annot. 1951, Art. 27, §§ 303–330. The following day, appellant purchased the machines. Although the appellant's officers say they thought the machines were being sent from Cumberland, Maryland, they were in fact transported from Parkersburg, West Virginia. The machines were thereafter stored at the farm in Prince George's County awaiting future use, but two of them were taken sixteen months later, to the amusement park in Calvert County. The other forty never left Prince George's County until they were seized by the agents of the Federal Bureau of Investigation, eighteen months later, on September 8, 1955. At the same time, the two machines which had been taken to the amusement park in Calvert County two months earlier were brought back to Prince George's County at the instance of the Government agents.

The United States then filed its libel in the District Court, seeking forfeiture of the machines under Section 1177.

The appellant intervened as claimant and resisted the forfeiture. The individuals who had transported the machines from West Virginia were brought to trial and convicted under Section 1172 prior to the hearing of this case in the District Court.

The appellant's primary contention is that the machines are not subject to forfeiture under Section 1177 because the Maryland Legislature, by permitting the use of gambling devices in Calvert County, thereby exempted that county from the prohibition of Section 1172. We think this contention cannot avail the appellant for two reasons: First, because the Maryland statute regarding Calvert County is not effective to create an exemption of that county from the provisions of the Johnson Act; second, because, in any event, these machines were transported into Prince George's County and remained there from sixteen to eighteen months. There is no basis whatever for claiming an exemption of Prince George's County from any Maryland legislation against gambling and gambling devices.

The Maryland Act sanctioning the use of gambling devices in Calvert County was originally passed in 1948, prior to the Johnson Act, and although re-enacted in 1951 subsequent to the Johnson Act, it makes no reference to the Congressional enactment. Nor does it state explicitly or in substance that interstate shipment of gambling machines into Calvert County shall not be unlawful. The Act merely immunizes that county from the general statute of the State of Maryland which outlaws gambling machines. While the United States contends that the legislature's failure to refer to the Johnson Act prevents us from according to Calvert County the exemption permitted by Section 1172, the appellant insists that reference to the federal statute is not required. Appellant's reasoning is that since Section 1172 is phrased in the "past" tense, it meant to include in the exemption from the Johnson Act any state or subdivision which *"has enacted"* a statute prior to the passage of the Johnson Act. The appellant further says that as such state statutes obviously could not have made reference to a federal statute not yet in existence, a fair interpretation of the proviso is that the purpose of Section 1172 was to implement *existing* state legislation relating to gambling by exempting from the prohibitions of the Johnson Act any area where the state permitted gambling.

Our reading of the statute, however, is different. If the exception permitted by Section 1172 were for state statutes allowing the *use* of gambling machines, then the words "has enacted" could fairly include prior state legislation, such as the law making gambling permissible in Calvert County. But the exception of Section 1172 is far narrower than this. It authorizes a state to exempt itself from the particular restriction of the statute which makes *importation* of such machines criminal, and not their mere use. Indeed, a state might condone the use of gambling machines within its borders and yet acquiesce in the federal prohibition of their importation from beyond the state's borders. Since no state could possibly exempt itself from the prohibition of the Johnson Act before its passage, the words "has enacted" cannot reasonably be deemed to have contemplated prior existing state legislation. Consequently, the only rational interpretation of the words "has enacted" is that the tense of the verb is designed to refer to state statutes enacted prior to the commission of the offense of transporting across state lines. Hence, there is no force in the appellant's argument. We hold that to avoid the special prohibition of the Johnson Act, namely, the importation of gambling devices, a state law must in substance exempt itself or its subdivision therefrom. The Maryland statute does not do so.

Even were we to hold that the Maryland law regarding Calvert County satisfies the exemption provision of Sec-

tion 1172, we do not perceive how it could comfort appellant. This is not a case where goods destined for one jurisdiction have merely passed through another jurisdiction en route because of geographical necessity. Nor did the property have a merely temporary situs in Prince George's County while in transit. In such cases, it might be contended that the law in the place of ultimate destination affords protection. In this case it is undisputed that the machines libeled came to rest in Prince George's County. Forty of them remained there for eighteen months without ever being taken to Calvert County, and the remaining two were stored in Prince George's County for sixteen months. By reposing for many months in Prince George's County after being shipped from West Virginia, the two machines also became clearly subject to the right of the United States to libel them.

Lastly, the appellant contends that since it had no knowledge that the machines were transported in interstate commerce, forfeiture is not permissible. But scienter of the owner is not a material fact in an *in rem* action against the machines under Section 1177. J. W. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376; Busic v. United States, 4 Cir., 149 F.2d 794. It is sufficient for forfeiture that the machines were the subject of a violation of Section 1172, which forbids their transportation in interstate commerce "knowingly," that is to say, on the part of the transporter. This knowledge is not disputed.

The District Judge, it may be observed parenthetically, noted that he did not find as a fact that the owners were without such knowledge, but he held that such knowledge on their part (as distinguished from that of the importers) is immaterial. We agree. Assuming that the purchaser acted in good faith, this has no real bearing on the issue, for "the forfeiture becomes absolute at the commission of the prohibited acts." Hen-

derson's Distilled Spirits, 14 Wall. 44, 57, 81 U.S. 44, 57, 20 L.Ed. 815.

The District Court's order is therefore Affirmed.