BLAIR et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 19, 1917. Rehearing Denied March 19, 1917.)

No. 2688.

1. CRIMINAL LAW ⚖➡1134(1)—REVIEW—CASE SUBMITTED ON AGREED STATEMENT.

When a case is submitted on an agreed statement of facts, the sufficiency of the facts so agreed on to sustain the judgment entered may be reviewed on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2986, 3056.]

2. CRIMINAL LAW ⚖➡753(3)—TRIAL—QUESTIONS FOR JURY—CASE SUBMITTED ON AGREED STATEMENT OF FACTS.

The constitutional right of a person charged with crime to a trial by jury is the right to a trial by jury according to the course of the common law, which right cannot be waived, and a court is without power in a criminal case to instruct the jury peremptorily to find the accused guilty, although the case is submitted on an agreed statement of facts, without other evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1729.]

3. CRIMINAL LAW ⚖➡1111(3)—AGREED STATEMENT OF FACTS—CONSTRUCTION.

It is not permissible to import into an agreed statement of facts, by inference, deduction, or otherwise, anything not expressly stated as a fact.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2894.]

In Error to the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Criminal prosecution by the United States against Ralph K. Blair, Thomas Addis, and others. Judgment of conviction against the defendants named, and they bring error. Reversed.

For opinion below, see 228 Fed. 77.

The plaintiffs in error were charged by the first count (the only count here involved) of the indictment in the court below with having conspired, in connection with certain other named parties within the jurisdiction of the court, "to willfully, unlawfully, and knowingly hire and retain within the territory of the United States, certain persons, to wit (naming 25 persons), and other persons, whose names are to the grand jurors aforesaid unknown, to go beyond the limits and jurisdiction of the United States, with the intent on the part of the persons hereinabove mentioned, and divers other persons whose names are to the grand jurors aforesaid unknown, to enlist and enter in the service of a foreign prince, to wit, the king of Great Britain and Ireland, as soldiers, and with the intent on the part of the said defendants that the said persons hereinabove mentioned, and divers other persons whose names are to the grand jurors aforesaid unknown, should be enlisted and entered in the service of a foreign prince, to wit, the king of Great Britain and Ireland, as soldiers." The indictment also alleged certain overt acts done in pursuance of the alleged conspiracy.

Upon a plea of not guilty on behalf of the defendants to the indictment, the case came on for trial before a jury duly impaneled, whereupon by stipulation of the attorneys of the respective parties the following agreed statement of facts was introduced as evidence, and the sole evidence in the case, upon which agreed statement the court was moved on behalf of the defendants to direct the jury to return a verdict in their favor, and on behalf of

the government a 'like motion was made for a directed verdict of guilty. The trial court, after due consideration, in a carefully ·prepared opinion and charge, directed the jury to render a general verdict of not guilty as to all of the defendants except the present plaintiffs in error, as to whom the jury should return a verdict of guilty upon the first count, and not guilty upon the second count of the indictment. The jury ·having returned a verdict in accordance with the instructions of the court, judgment was entered against the defendants Blair and Addis, who are the plaintiffs in error here.

The agreed statement is as follows:

### "Agreed Statement of Facts.

"In the above-entitled matter, the parties hereby agree that the facts hereinafter set forth are, and may be, treated as the facts in the cause, and that upon a consideration of said facts the court may instruct the verdict which the jury shall render in said cause:

### "Facts.

"1. That the kingdom of Great Britain and her allies were, at all times herein mentioned, and at all times subsequent to August 1, 1914, in state of war with the German empire and her allies.

"2. That his majesty, the king of Great Britain and Ireland, was at all times herein mentioned desirous of the return to Great Britain of British subjects for employment in the army and navy and in the various branches of the national service of all kinds.

"3. That the said kingdom of Great Britain does not have now, and did not have at the times herein mentioned, any law or laws providing for compulsory service of its subjects in either its army or navy.

"4. That the men whose names are mentioned in the indictment, concerning whom the defendants are alleged to have conspired in violation of sections 37 and 10 of the federal Penal Code, were not, nor was either or any of them, members of the reserve of the British army or navy.

### "I.

"5. That at all of the times herein mentioned A. Carnegie Ross was, and still is, his Britannic majesty's consul general at San Francisco, in the state and Northern district of California.

### "II.

"6. That at the outbreak of said above-mentioned war the said A. Carnegie Ross, consul general as aforesaid, acting for and on behalf of his majesty's government, did, on August 3, 1914, cause to be published in the two daily morning newspapers of general circulation and published in said city and county of San Francisco, to wit, 'the San Francisco Examiner' and 'the San ·Francisco Chronicle,' an advertisement, a copy of which is hereto attached and marked Exhibit A.

"7. Also that a news item appeared in said papers at the same time, a copy of which is hereto attached and marked Exhibit B.

"8. That a large number of people responded to said notices, only about 6 of whom were in fact reserves.

### "III.

"9. That likewise said A. Carnegie Ross did, during all the times intervening between August 1, 1914, and March 18, 1915, cause to be kept a book or register, upon which was entered the name and address of persons calling at the consulate to inquire concerning military service, which said book or register is hereby filed and made a part of this statement, and is hereby designated as Exhibit C hereto.

"10. That said A. Carnegie Ross did, on or about March 15, 1915, procure the services of the defendants Ralph K. Blair and Thomas Addis, and also of one W. K. Harris (not now in the United States), who, at San Francisco, in the state and Northern district of California, did the acts and things herein set forth as done by them.

"11. That defendants Blair and Addis, and said Harris, on March 18, 1915, rented and furnished Room 59 of the Sherwood Building, at 21 Pine street, in the city and county of San Francisco, as an office, under the name of the 'British Friendly Association,' said furniture being rented from the Indianapolis Furniture Company.

"12. That on May 27, 1915, said defendants Blair and Addis removed said office to 68 Fremont street, in said city and county of San Francisco, and returned said furniture.

"13. That one W. K. Harris was in charge of said office until its removal aforesaid, after which defendant Ralph K. Blair was in charge thereof.

"14. That letter heads were printed for the use of said British Friendly Association, and the same were used by said Harris to the knowledge of defendants Blair and Addis in its correspondence, and other business transactions, one of which said letter heads, together with one of the letters of said association, are hereto annexed and made a part hereof, and hereby designated as Exhibit D hereto.

"15. That the British Friendly Association was an unincorporated concern, and was organized with the consent of the above-named consul general, and was composed of the said two defendants Blair and Addis and said Harris.

"16. That the expenses of said organization were paid from the funds of the British government through said consul general.

"17. That said British Friendly Association had no other business, and was organized for no other purpose, than to facilitate the transportation to New York of British subjects, sound in body and limb.

"18. That when said association opened its office at 21 Pine street, the said register above referred to was, by said consul general, to the knowledge of defendants Blair and Addis, temporarily intrusted to said W. K. Harris, accompanied by the following instructions, to wit: '(1) To send only British subjects who had military training. (2) To make no engagements of any description whatever. (3) To give no pay or advance. (4) To make no solicitation. (5) Not to send more than 50 men at a time. (6) To require such proof of British nationality as such men are usually able to give. (7) They were to give no information as to pay, allotments, etc. (8) The men were to be examined to see if they were physically suitable.' And said register continuously remained in the possession of said Harris until on or about May 27, 1915, when it was turned over by him to the defendant Blair, in whose possession said register remained until returned by said Blair to said consul general, and by him voluntarily offered for the purpose of this Agreed Statement of Facts. Said Harris left the state of California on May 27, 1915.

"19. That said Harris, to the knowledge of defendants Blair and Addis, caused to be opened correspondence and communications with the parties named on said register.

"20. That the said consul general, and the attachés of said consulate, referred inquiring individuals to the defendant Ralph K. Blair, giving them the street number of said British Friendly Association.

"21. That there was printed for the use of said British Friendly Association, blank receipts in a form as follows:

" '$...... San Francisco, ......, 1915.

" 'Received from R. K. Blair $....... for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

" '............'

"Also blank cards in a form as follows:

" 'Name ..........................................No. ......
" 'Address .......................................Age ......
" 'Birthplace .........................................
" 'Present occupation ..................................
" 'Previous occupation and experience at home or elsewhere ..............
" 'Have you any family here? ......'

"22. That on May 6th, the defendant Blair, with funds of the British government furnished through the consul general as aforesaid, purchased 8 tour-

ist railroad tickets through the firm of Thos. Cook & Sons, a corporation, over the Santa Fé Railway and connecting railroads, with destination New York, paying therefor the sum of $516.80.

"23. That on May 18, 1915, the defendant Blair, with funds of the British government furnished through the consul general as aforesaid, purchased 12 tourist railroad tickets through the firm of Thos. Cook & Sons, a corporation, over the Southern Pacific Company and connecting railroads, with destination New York, paying therefor the sum of $775.20.

"24. That on May 15, 1915, the defendant Blair, with funds of the British government furnished through the consul general as aforesaid, purchased 8 tourist railroad tickets through the firm of Thos. Cook & Sons, a corporation, over the Southern Pacific Company and connecting railroads, with destination New York, paying therefor the sum of $516.80.

"25. That on June 8, 1915, the defendant Blair, with funds of the British government furnished through the consul general as aforesaid, purchased 30 tourist railroad tickets through the firm of Thos. Cook & Sons, a corporation, over the Southern Pacific Company and connecting railroads, with destination New York, paying therefor the sum of $1,938.00.

"26. That on June 15, 1915, the defendant Blair, with funds of the British government furnished through the consul general as aforesaid, purchased 27 tourist railroad tickets through the firm of Thos. Cook & Sons, a corporation, over the Southern Pacific Company and connecting railroads, with destination New York, paying therefor the sum of $1,744.20.

"27. That on June 15, 1915, the defendant Blair, with funds of the British government furnished through the consul general as aforesaid, purchased one first-class railroad ticket through the firm of Thos. Cook & Sons, a corporation, over the Southern Pacific Company and connecting railroads, with destination New York, paying therefor the sum of $76.60.

"28. That on June 21, 1915, the defendant Blair, with funds of the British government furnished through the consul general as aforesaid, purchased 5 tourist railroad tickets through the firm of Thos. Cook & Sons, a corporation, over the Southern Pacific Company and connecting railroads, with destination New York, paying therefor the sum of $323.00.

"29. That each of the above tickets was used in transporting men who claimed to be British subjects, and who claimed to have done service in time past in either the army or the navy of Great Britain, and who had stood a physical examination by the defendant Thomas Addis, a physician.

"30. That some of said tickets were used in transporting to New York the men whose names are set forth in the indictment.

"31. That the said British Friendly Association caused to be transported in the manner set out above 155 men.

"32. That each of said men whose names are mentioned and set forth in the indictment, other than the defendants, signed a receipt, the originals of which are herewith annexed and collectively are designated as Exhibit E hereto.

"33. That for (and not by) each of said men there was filled out one of said cards above set forth, which said cards for the parties named in the indictment are hereunto attached and designated as Exhibit F hereto.

"34. That for the purpose of the orderly transportation of said men it was necessary to provide board and lodging for them, both pending physical examination and after examination and pending transportation; and such board and lodging was accordingly provided, and the expense thereof paid by the British government in the same way and manner as other expenses herein referred to were paid.

"35. That for this purpose the defendant Blair, prior to the transportation of men named in the indictment, made a contract with a firm at 735 Harrison street, San Francisco, known as the Workingmen's Aid, in charge of a man named Henry Smith, to board and lodge men at the rate of $3.50 per week.

"36. Defendant H. C. Lane, claiming to act for and on behalf of defendant Blair, also made arrangements with a Mrs. Lee of 735a Harrison street, San Francisco, to lodge men—as many as 20 or 25 at a time—at $1.25 each per week.

"37. That some of the men named in the indictment boarded and lodged at these places, and the expense was paid by the British government in the same way and manner as other expenses herein referred to were paid.

"38. That an unknown person at certain times stood near the entrance of 68 Fremont street, in the city and county of San Francisco, and instructed applicants as to the necessary requirements before they could be transported; but it is admitted that, if Blair and Addis took the stand and testified herein under oath, they would testify that the same was done without their knowledge or authority.

"39. That the defendant Kenneth Croft was the party designated by said defendant Blair to hold the tickets and sustenance money upon the transportation of the 27 men (the parties named in the indictment being among said 27 men) who left on June 16, 1915, destined for New York. That one Seamens performed a similar service on a prior occasion.

"40. That the sum of $9.10 advanced to each man was not paid to said men direct, but was delivered in bulk to defendant Croft, who gave it out 50 cents and $1 at a time on the trip as they journed to New York.

"41. The party was detained at Chicago by special agents of the United States, but after being interviewed by those officials the party proceeded to New York, and while in Chicago defendant Croft sent the following telegrams that were received by defendant Blair:

" 'B146 CH 22                                        Chicago Ill. 19—1121 A. M.

" 'RKBLAIR  British Friendly Ass 68 Fremont San Francisco

" 'Held up here by Federal authorities for investigation  Need further funds for parties sustenance  Wire Hundred Room Eight Five Nine Federal Building.                                        KENNETH CROFT.'

" '297 D 11 Collect                                        Chicago Ill. 412 PM 19

" 'R. K. BLAIR British Friendly Association.

" 'Sixty Eight Fremont Street San Francisco Calif  Party twenty three strong proceeded New York three PM  Following later.'

" 'C274 CHVN 5 ONL                        SP Chicago Ills June 20, 1915

" 'R. K. Blair 68 Fremont St San Francisco Cal

" 'Looked for word responding my wires reporting detention and final satisfactory dispatch of party  Papers here full of matter and news sent New York mentioning me prominently making procedure through New York impossible for me owing to personal matter I spoke about consequently remaining here till can make arrangements  Will write fully.
                                        " 'CROFT  1047P'

"42. That this party of men arrived in New York on June 22, 1915.

"43. Later, and on the next day, some of this party appeared before a man called Captain Roche at the British consulate at 17 State street, in New York, where a second physical examination was had, and where those passing this examination were handed an empty envelope similar to the one hereto attached and marked Exhibit G, which was to be exchanged at the dock for a steamship ticket to Liverpool, England.

"44. That all British soldiers and seamen, whether colonial or otherwise, received a daily pay and may receive pensions and allotments after service is terminated. These facts were known both to the defendants and to the transported men, except that said rate of daily pay, or whether the same had been increased, was not known to any of the defendants.

"45. It was a fact that the defendants Blair and Addis supposed, believed, and presumed that the transported men would enlist in the military or naval service of Great Britain, and it was the individual intent of a majority of said transported men to enlist in such service.

"46. The party named in the indictment as Frank G. Cooke was an American citizen, but never was in the military or naval service of Great Britain, and he, the said Frank G. Cooke, falsely stated to said defendants Blair and Addis that he was a British subject, born in Dublin, Ireland; that he had served in the Summerset Light Infantry, a military organization, in the military service of Great Britain, and he, the said Frank G. Cooke, while detained at Chicago by the officials of the United States as aforesaid, falsely

stated to them that he was a British subject, born in St. Johns, New Brunswick, Dominion of Canada, and that he had served as a soldier in the Canadian Dragoons, a military organization, in the military service of Great Britain.

"47. William Stables was, at the time of his transportation, an enlisted man of the American army, but was a British subject, and he stated to the defendants Blair and Addis that he had served as a soldier in the 4th King's Own Royal Lancaster Regiment, a military organization, in the military service of Great Britain, and falsely represented that his occupation at that time was the civilian occupation of a painter, and that his residence at that time was Penngrove, California, and the fact that he. the said William·Stables, was at that time a soldier in the American army was concealed by him, and was wholly unknown to said defendants.

"48. Robert Johnson was formerly an enlisted man of the American navy under the name of Watson, but is a British subject, and was a deserter from the British navy.

"49. All other parties named in the indictment are, so far as known, British subjects.

"50. The defendants are each British subjects, but none of them are reserves.

"51. That the funds advanced were by check of A. Carnegie Ross upon an account at the Canadian Bank of Commerce of San Francisco, and made payable to either Ralph K. Blair or the defendant Blair, Murdock & Co., a corporation.

"52. That defendant Blair deposited some of the funds in his own name at the Bank of California, a San Francisco corporation, and some in the name of Blair, Murdock & Co., at the same bank, and checked on the accounts accordingly.

"53. That no other proof of the military or naval service of the men whose names appear in the indictment was required or produced than what appears from the statement furnished by said men and appearing on the cards herewith, and designated Exhibit F.

"54. In the following countries: The German empire, the French republic, the Austria-Hungary monarchy, the kingdom of Italy, the Russian empire, and the kingdom of Servia—there are now, and at all the times in the indictment mentioned were, laws enforced for the compulsory service of their subjects in their armies and navies, and the subjects of those countries in the United States of America have heretofore, and during the times in said indictment mentioned, returned freely from the United States of America to their countries for military service as required by their respective laws, and have been aided and assisted thereunto by their respective consular and diplomatic officers.

"55. At none of the times mentioned in said indictment was it expressly said by defendants, or any of them. in words to any of the men transported to New York that they, the said transported men, should enlist or enter themselves in the service of Great Britain as soldiers, sailors, or marines.

"56. Nothing herein contained is, or shall be, construed as any waiver, surrender, qualification, limitation, or restriction of the right to remove this cause by writ of error to an appellate court; but, on the contrary, such right to remove this cause to an appellate court by writ of error shall be and is hereby preserved in all respects.

"The United States of America,
            "By Jno. W. Preston, United States Attorney.
"All of the Defendants (except Thomas Addis),
            "By J. J. Dunne,
"Wright & Wright & Stetson, Their Attorneys.
"Thomas Addis.
            "By Henry Geo. Dinkelspiel,
                "John R. Jones, His Attorneys."

U. S. Exhibit A—Notice.

"His Majesty, King George the Fifth, has issued a proclamation ordering that the Royal Naval Reserve be called into actual service.

"Notice is hereby given that all men in the Royal Naval Reserve who are

absent from the British Islands are liable to serve in the British Navy if called upon by the officer commanding any of His Majesty's ships.

"Royal Reserve men serving in merchant ships abroad are to report themselves to the senior British Naval Officer at whatever port they may be at; failing that, to the first British Naval Officer they may meet or to the nearest Register of Naval Reserve on arrival in the British Isles.

"Royal Naval Reserve men abroad not serving in merchant vessels are to report themselves to the nearest British Naval, Consular or Colonial Officer forthwith.  A. Carnegie Ross, H. B. M. Consul General.

"August 2, 1914.

"S. F. Examiner, Aug. 3, 1914."

### U. S. Exhibit B—Reservists of Britain Report at Consulate.

"The news that the government of Great Britain had summoned all naval reserves to immediately report for duty excited the greatest interest and patriotism, yesterday amongst the many thousands of Great Britain's subjects who are resident in San Francisco. Great numbers of naval reservists reported within a few hours at the consulate in the Hansford Building in Market street.

"The order for mobilization of the reserves was received by Consul General A. Carnegie Ross at noon and was immediately published in the extra editions of the newspapers. The instructions received take the form of a special admiralty order calling on all reserves of the Royal British Navy immediately to report to their senior British naval officer, or, failing that, to the first British naval officer they meet. Those not aboard a ship are to report forthwith to the British consulate.

"S. F. Examiner, Aug. 3, '14."

"In the District Court of the United States in and for the Northern District of California, First Division.

"The United States of America, Plaintiff, v. Blair-Murdock Company, a Corporation, Ralph K. Blair, Thomas Addis, Harry G. Lane, Kenneth Croft, C. D. Lawrence, Defendants.

### "Stipulation as to U. S. Exhibit C.

"In the above-entitled action it is hereby stipulated and agreed by and between the parties, that Exhibit C, now attached to and a part of the 'Agreed Statement of Facts' now on file herein and incorporated in the bill of exceptions herein, need not be printed in full in the transcript of record hereafter to be prepared and filed upon writ of error in the above-entitled action in the Circuit Court of Appeals for the Ninth Judicial Circuit; but the original document itself, marked and used as said Exhibit C, shall be sent up to said Circuit Court of Appeals and filed in the office of the clerk thereof along with the above-mentioned transcript of record, and may be referred to in all respects and to all intents as if the said Exhibit C had been printed in full in said transcript of record; and it is further stipulated and agreed between said parties that this stipulation shall be printed in and as part of said transcript of record in place and stead of said Exhibit C.

"United States of America, Plaintiff,
"By Jno. W. Preston,
"United States Attorney for the Northern District of California at San Francisco.

"Ralph K. Blair, Defendant.
"By J. J. Dunne,
"Allen G. Wright, His Attorneys.
"Thomas Addis, Defendant.
"By Henry G. W. Dinkelspiel,
"John R. Jones, His Attorneys.

"Dated, November 17, 1915."

Indorsed: "Filed Nov. 17, 1915, W. B. Maling, Clerk, by T. L. Baldwin, Deputy Clerk."

U. S. Exhibit D—Letter Dated March 31, 1915, from W. K. Harris to Herbert Ernest Dakin.

"British Friendly Association, 59 Sherwood Building, 21 Pine Street,

"San Francisco, California, Wed., 31st March, 1915.

"Dear Sir: I have just heard from the Doctor, asking me to cancel the appointments made for this evening, as he is unable to attend. I am very sorry to have to put you off; but if I do not hear to the contrary, I shall take it for granted that you will be along tomorrow (Thursday) evening, at eight o'clock—Pine Street entrance. Faithfully, W. K. Harris.

"Mr. Herbert Ernest Dakin, 2416 Washington Street, San Francisco."

U. S. Exhibit E—Receipts.

"$12.80 San Francisco, June 16, 1915.

"Received from R. K. Blair $3.70/100 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Wm. V. Grenney.

"$11.10 San Francisco, June 16, 1915.

"Received from R. K. Blair $2.00 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Horace Sage.

"$9.95 San Francisco, June 16, 1915.

"Received from R. K. Blair $.85/100 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Rudolph Duncan.

"$15.60 San Francisco, June 16, 1915.

"Received from R. K. Blair $6.50/100 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"J. L. Stanley.

"$9.95 San Francisco, June 16, 1915.

"Received from R. K. Blair $.85/100 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Frank G. Cooke.

"$14.60 San Francisco, June 16, 1915.

"Received from R. K. Blair $5.50/100 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Patrick Casey.

"$10.10 San Francisco, June 16, 1915.

"Received from R. K. Blair $1.00 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Patrick Devlin.

"$16.10 San Francisco, June 16, 1915.

"Received from R. K. Blair $7.00 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Hugh McCubbin.

"$14.10 San Francisco, June 16, 1915.

"Received from R. K. Blair $5.00 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Harry Gorman.

"$13.60 San Francisco, June 16, 1915.

"Received from R. K. Blair $4.50 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"Harry Albutt.

"$13.60 San Francisco, June 16, 1915.

"Received from R. K. Blair $4.50 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.

"W. Berkett.

"$10.10                                    San Francisco, June 16, 1915.
"Received from R. K. Blair $1.00 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "James Smith.

"$11.10                                    San Francisco, June 16, 1915.
"Received from R. K. Blair $2.00 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "Wm. Stables.

"$18.85                                    San Francisco, June 16, 1915.
"Received from R. K. Blair $9.75 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "James B. Sullivan.

"$12.60                                    San Francisco, June 16, 1915.
"Received from R. K. Blair $3.50 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "James T. Wilson.

"$13.10                                    San Francisco, June 16, 1915.
"Received from R. K. Blair $4.00/100 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "Edmond Qualtrough.

"$12.60                                    San Francisco, June 16, 1915.
"Received from R. K. Blair $3.50 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "Jo. McDonough.

"$10.35                                    San Francisco, June 16, 1915.
"Received from R. K. Blair $1.25 for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "Paul E. Wilkins.

"$9.10                                     San Francisco, June 16, 1915.
"Received from R. K. Blair $———— for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "Robert Johnson.

"$9.10                                     San Francisco, June 16, 1915.
"Received from R. K. Blair $———— for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "Harry Boyd.

"$9.10                                     San Francisco, June 16, 1915.
"Received from R. K. Blair $———— for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "W. Jolly.

"$9.10                                     San Francisco, June 16, 1915.
"Received from R. K. Blair $———— for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "J. D. Steen.

"$9.10                                     San Francisco, June 16, 1915.
"Received from R. K. Blair $———— for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "E. Purtell.

"$9.10                                     San Francisco, June 16, 1915.
"Received from R. K. Blair $———— for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "F. Bond.

"$9.10                                     San Francisco, June 16, 1915.
"Received from R. K. Blair $———— for sustenance while in San Francisco awaiting departure and $9.10 for sustenance during trip to New York.
                                                        "Claude R. Hill."

U. S. Exhibit F—Cards.

Name—Harry Albert.                                    June 16     1.00
                                                                  1.00
Address—Burlingame Country Club.   No.                            1.00
                                                                   .50
Birthplace—London                                     Age 38      .50
                                                                   .50
Present Occupation—
Previous Occupation and Experience at Home or Elsewhere—A. S. C.
Have you any family here?

Name—W. Berkett.                                      June 16
Address —                                             No.
Birthplace—Baringfurness                              Age 35
Present Occupation —
Previous Occupation and Experience at Home or Elsewhere—11th Hussars. 7
        years Corporal.
Have you any family here?

Name—Harry Boyd.                                      J. 16
Address—292 14th St.                                  No.
Birthplace—London.                                    Age 37
Present Occupation—Barber
Previous Occupation and Experience at Home or Elsewhere—R. N.
Have you any family here?

Name—Patrick Casey.                                   June 15     .50
Address—St. Anthony Hotel                             No.
Birthplace—Dublin, Ireland.
Present Occupation—Baker.                              Age 30.
Previous Occupation and Experience at Home or Elsewhere—2d Batt. Dublin
        Fusileers.                                            A. Co.
Have you any family here?

Name—Harry Gorman.                                    June 16    5.00
Address—Hotel Brooklyn                                No.
Birthplace—Quebec, Canada.                            Age 34
Present Occupation—Provision Store
Previous Occupation and Experience at Home or Elsewhere—Canadian M. I.
        Cape Colony Cycle Corps.  Border Scouts.  Capetown Highlanders.
Have you any family here?

Name—W. Grenney.                                      June 16
Address—                                              No.
Birthplace—Devon.                                     Age 24
Present Occupation
Previous Occupation and Experience at Home or Elsewhere—Devon Volun-
        teers.
Have you any family here?

Name—Claude R. Hill.                                  June 16
Address—Essex.                                        No.
Birthplace—Sydney, Australia.                         Age
Present Occupation—Shipping Clerk.
Previous Occupation and Experience at Home or Elsewhere—Hornsby Cadets.
Have you any family here?

Name—Robert Johnson.                                  June 16
Address—Edinburgh, Scotland.                          No.
Present Occupation—Sailor.                            Age 26
Previous Occupation and Experience at Home or Elsewhere—R. N. British
        Navy.
Have you any family here?

Name—W. Jolly.                                                      June 16
Address—                                                           No.
Birthplace—Northampton.                                            Age 31
Present Occupation—
Previous Occupation and Experience at Home or Elsewhere—Bedfordshire
     Yeomanry.  3 years.
Have you any family here?

Name—H. G. Lane.                                                    June 16
Birthplace—Chester.                                                No. 32
Present Occupation—                                                Age
Previous Occupation and Experience at Home or Elsewhere—Canadian N. W.
     Police.  3.  Canadian Mounted Rifles.  3.
Have you any family here?

Name—Hugh McCubbin.                                                      2.50
Address—Portland House, Howard St.                                 No.
Birthplace—Scotland (nr. Glasgow).                                 Age 43
Present Occupation—
Previous Occupation and Experience at Home or Elsewhere—P. of W. Light
     Horse (Commissioned).
Have you any family here?

Name—Jo. McDonough.                                                 June 16
Address—                                                           No.
Birthplace—County Mayo, Ireland.                                   Age
Present Occupation—Laborer.
Previous Occupation and Experience at Home or Elsewhere—88 Connaught
     Rangers.
Have you any family here?

Name—E. Purtell.                                                    June 16
Address—247a Carl St.                                              No.
Birthplace—N. S. W., Australia.                                    Age 34
Present Occupation—Chauffeur.
Previous Occupation and Experience at Home or Elsewhere—S. A. Light
     Horse.
Have you any family here?

Name—Edward Qualtrough.                                            June 16   4.00
Address—Afton Apts.                                                No.
Birthplace—Liverpool.                                             Age 27
Present Occupation—
Previous Occupation and Experience at Home or Elsewhere—6th Liverpool
     Rifles.
Have you any family here?

Name—James Smith.                                                  June 16
Address—Chatham, Kent.                                             No.
Birthplace—29 East Street, Chatham, K.                            Age 21
Present Occupation—Laborer.
Previous Occupation and Experience at Home or Elsewhere—Royal Navy.
Have you any family here?

Name—Wm. Stables.                                                  June 16
Address—Penngrove, Cal.                                            No.
Birthplace—Ulverston, Lancashire.                                 Age 23
Present Occupation—Painter.
Previous Occupation and Experience at Home or Elsewhere—4th King's Own,
     Royal Lancaster.
Have you any family here?

Name—J. L. Stanley.                                June 16
Address—                                           No.
Birthplace—Canada.                                 Age 26
Present Occupation—
Previous Occupation and Experience at Home or Elsewhere—2 years St.
        Johns M. Acc.
Have you any family here?

Name—J. D. Steen.                                  June 16
Address—32 Sacramento St.                          No.
Birthplace—County Tyrone, Ireland.                 Age 26
Present Occupation—Surveyor.
Previous Occupation and Experience at Home or Elsewhere—19th Alberta
        Dragoons.
Have you any family here?

Name—James T. Wilson.                              June 16
Address—3274 Encinal Ave., Alameda.                No.
Birthplace—Norwich, England.                       Age 34
Present Occupation—Stevedore.
Previous Occupation and Experience at Home or Elsewhere—4th Middlesex.
Have you any family here?

Name—F. Bond.
Address—                                           No.
Birthplace—Clapham Junction, London.               Age.
Present Occupation—
Previous Occupation and Experience at Home or Elsewhere—3rd Bat. Lincoln-
        shire Reg.
Have you any family here?

Name—Horace Sage.                                  June 16
Address—35 Pond St.                                No.
Birthplace—London.                                 Age 32
Present Occupation—Stevedore.
Previous Occupation and Experience at Home or Elsewhere—Royal West
        Canadians.
Have you any family here?

Name—Kenneth Croft.                                June 16
Address—Palace Hotel.                              No.
Present Occupation—                                Age 38
Previous Occupation and Experience at Home or Elsewhere—Actg. Q. M. 5th
        M. I. & Leominster Horse.
Have you any family here?

Name—Frank G. Cooke.                               June 16
Address—150 Howard St.                             No.
Birthplace—Dublin, Ireland.                        Age 27
Present Occupation—Logger.
Previous Occupation and Experience at Home or Elsewhere—Somerset, L. I.
Have you any family here?

Name—Patrick Devlin.                               June 16
Address—                                           No.
Birthplace—Dundock.                                Age 25
Present Occupation—
Previous Occupation and Experience at Home or Elsewhere—Navy.
Have you any family here?

Name—Rudolph Duncan.                               June 16
Address—City Hotel                                 No.
Birthplace—Glasgow.                                Age 26
Present Occupation—Tile Layer.
Previous Occupation and Experience at Home or Elsewhere—R. A. 49th Field.
Have you any family here?

Name—James B. Sullivan.                                    June 16
Address—                                                   No.        3.00
Birthplace—Regina.                                         Age 26     1.00
Present Occupation—                                                   1.00
                                                                       .50

Previous Occupation and Experience at Home or Elsewhere—C. Battery, 2d
    Canadian Field Artillery.
Have you any family here?

Name—Paul E. Wilkins.                                      June 16
Birthplace—Regina.                                         No.
Address—
Present Occupation—Well Driller.
Previous Occupation and Experience at Home or Elsewhere—Royal Mounted.
Have you any family here?

### U. S. Exhibit G—Steamship Ticket.

#### White Star Line.

| New York | Plymouth   | Cherbourg | Southampton |
|----------|------------|-----------|-------------|
| New York | Queenstown |           | Liverpool   |

#### Notice.

"The company's liability, for baggage is strictly limited, but passengers can protect themselves by insurance, which may be effected at this or any of the company's offices or agencies.

"Your attention is specially directed to the conditions of transportation in the inclosed contract.

#### "III Class Passage Ticket.

"For Steamship Arabic.

"Sailing June 23, 1915, from Piers 59-60, North River at 10 a. m., Foot West 18th and 19th Street—New York.

"Tickets must be stamped at the passenger office on pier before going on board.

"Baggage must be claimed before going on steamer.

"Passengers must be on board at least one hour before sailing."

The bill of exceptions recites: "The foregoing 'Agreed Statement of Facts' and the Exhibits A, B, C, D, E, F, and G thereto attached, constituted and was the whole and entire showing of fact made in the above-entitled cause; and no other showing of fact or facts, save and except said 'Agreed Statement of Facts' and said exhibits attached thereto, was presented in said cause to said court and jury or either of them; and no testimony or evidence of any character or description, whether oral or written, was received by or placed before said court or jury in addition to the above-mentioned 'Agreed Statement of Facts' and said exhibits thereto attached."

J. J. Dunne, Allen G. Wright, Henry G. W. Dinkelspiel, and John R. Jones, all of San Francisco, Cal. (T. E. K. Cormac, of San Francisco, Cal., of counsel), for plaintiffs in error.

John W. Preston, U. S. Atty., and M. A. Thomas, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The indictment in question is based on sections 37 and 10 of the Criminal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1088 [Comp. St. 1913, §§ 10201, 10174]), the former of which reads:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any

purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars, or imprisoned not more than two years, or both."

And the section which the defendants are charged with having conspired to violate, so far as here applicable, is as follows:

"Whoever, within the territory or jurisdiction of the United States, * * * hires or retains another person, * * * to go beyond the limits or jurisdiction of the United States with intent to be enlisted or entered in the service of any foreign prince, state, colony, district, or people, as a soldier, or as a marine or seaman, on board of any vessel of war, * * * shall be fined not more than one thousand dollars and imprisoned not more than three years."

[1] It is well settled that, when a case is submitted upon an agreed statement of facts, the sufficiency of the facts so agreed on to sustain the judgment entered may be reviewed on writ of error. United States v. Eliason, 16 Pet. 291, 300, 10 L. Ed. 968; Henderson's Distilled Spirits, 14 Wall. 44, 53, 20 L. Ed. 815; Hipple v. Bates County, 223 Fed. 22, 138 C. C. A. 436. See, also, Kennedy v. Brent, 6 Cranch, 187, 3 L. Ed. 194; Brent v. Chapman, 5 Cranch, 358, 3 L. Ed. 125.

[2] The Constitution of the United States provides:

"The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed; but when not committed within any state, the trial shall be at such place or places as the Congress may by law have directed." Article 3, § 2.

And by the Sixth Amendment of the Constitution it is declared:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The constitutional right thus secured to one charged with crime means a trial by jury according to the course of the common law, which right cannot even be waived. Thompson v. Utah, 170 U. S. 343, 346, 349, 353, 18 Sup. Ct. 620, 42 L. Ed. 1061; Freeman v. United States, 227 Fed. 732, 142 C. C. A. 256. And in the case of Sparf and Hansen v. United States, 156 U. S. 51, 105, 15 Sup. Ct. 273, 294 (39 L. Ed. 343), the Supreme Court distinctly adjudged that:

"It is not competent for the court, in a criminal case, to instruct the jury peremptorily to find the accused guilty of the offense charged or of any criminal offense less than that charged."

See, also, Atchison, T. & S. F. Ry. Co. v. United States, 172 Fed. 194, 96 C. C. A. 646, 27 L. R. A. (N. S.) 756; United States v. Taylor (C. C.) 11 Fed. 470.

Therefore the trial court in the present case had not the power to order the jury to return a verdict of guilty, regardless of its own view respecting the proper conclusion to be drawn from the facts agreed upon. And a little consideration will show why this is necessarily so.

As appears from the bill of exceptions, the entire case of the government was made to rest upon the statement of facts agreed upon in writing, signed by the attorneys of the respective parties and filed for record, respecting which the bill of exceptions expressly recites:

"The foregoing 'Agreed Statement of Facts' and the Exhibits A, B, C, D, E, F, and G thereto attached, constituted and was the whole and entire showing of fact made in the above-entitled cause; and no other showing of fact or facts, save and except said 'Agreed Statement of Facts' and said exhibits attached thereto, was presented in said cause to said court and jury, or either of them, and no testimony or evidence of any character or description, whether oral or written, was received by or placed before said court or jury in addition to the above-mentioned 'Agreed Statement of Facts' and said exhibits thereto attached."

It will be readily seen, not only from the stipulation itself, but from the foregoing declaration contained in the bill of exceptions, that there was no agreement between the parties in regard to any inference or deduction to be drawn from the actual facts agreed on. Obviously, all such inferences and deductions were left to be drawn, and only could be properly drawn, by the jury upon submission of the case to them, after opportunity of argument by the counsel of the respective parties. It might have been, and doubtless would have been, argued to the jury, as it is argued here to this court, that the agreed statement of facts wholly fails to show that the present plaintiffs in error, or, indeed, any of the defendants to the indictment, ever within the territory of the United States, conspired to "hire or retain," or ever did "hire or retain," any of the persons named in the indictment, or any other person or persons, to go beyond the limits and jurisdiction of the United States with the intent or purpose specified in the indictment. The defendants thereto might well have contended before the jury, as the plaintiffs in error do here, that what they did, as shown by the agreed statement of facts, was in effect to aid and assist the persons referred to in the indictment and in the agreed statement of facts to go beyond the limits of the United States with the intent and for the purpose charged, and was in no respect the hiring and retaining them prohibited by the statute.

[3] Now it is thoroughly settled that agreed statements of fact rest upon the consent of the parties, and upon that only. Manifestly, therefore, it is not permissible to import into such a statement, by inference, deduction, or otherwise, anything not expressly stated as a fact. Pomeroy's Lessee v. Bank of Indiana, 68 U. S. (1 Wall.) 592, 603, 17 L. Ed. 638; The Clara, 102 U. S. 200, 202, 26 L. Ed. 145; Old Colony R. R. Co. v. Wilder, 137 Mass. 536, 538; Friedman v. Jaffe, 206 Mass. 454, 92 N. E. 704; Vera v. Mercantile F. & M. Ins. Co., 216 Mass. 154, 103 N. E. 292; Texas Mexican Ry. Co. v. Scott, 60 Tex. Civ. App. 482, 129 S. W. 1170, 1178; Crandall v. Amador County, 20 Cal. 72, 74.

In the course of his instructions the learned trial judge undertook to explain to the jury the meaning of the statute upon which the indictment is based, which was clearly his province to do; but the difficulty is that he went far beyond that, and himself, by means of inferences, deductions, and argument from the facts agreed upon, drew the conclusion of guilt which it was the exclusive province of the jury to deter-

mine, in the light of the law as given to them by the court. No amount of argument can make this plainer than the language of the court itself, shown in the following excerpts from the instructions, which directed a verdict of guilty against the plaintiffs in error upon the first count of the indictment:

"These, then, briefly stated, gentlemen, are the facts that are before us. It remains now to consider them in the light of the law. That some of the defendants, and particularly Blair and Addis, were acting in concert and with a well-defined purpose on their part to accomplish some certain things, does not admit of doubt. Together they formed the British Friendly Association, the purpose of which was to transport to New York British subjects sound in body and limb. It is not to be conceived, and indeed all of the circumstances negative any such conception, that they expected the journey of the men so transported to end at New York. The ultimate destination of these men was some point in the British empire, and the defendants knew it, and were jointly engaged in sending them there. This phase of the case, therefore, presents no difficulty. The grave question is whether the defendants, in doing what they did, were engaged in a criminal conspiracy. They had associated themselves together to transport to New York British subjects, sound in body and limb, whose ultimate destination was England, and at least a majority of whom intended to enlist there in the military or naval service, and all of whom the defendants supposed, believed, and presumed would so enlist. * * * The sole question here is: Do the facts before us show a conspiracy on the part of defendants to violate the statute which we have been considering?

"What are the salient facts? The king of Great Britain and Ireland was desirous of the return to his kingdom of British subjects for employment in the army and navy and in various branches of the national service of all kinds, and the British consul general at San Francisco caused to be published a notice calling into actual service the Royal Naval Reserve. A large number of persons responded, a few of whom were in fact reserves. The consul general, however, kept a register of all persons calling on him to inquire concerning military service, and upon this register were the names and addresses of over 600 individuals under various headings, such as 'Volunteer Army Volunteers,' 'Army Volunteers and Ex-Soldiers,' 'Army Reserve,' 'Royal Naval Volunteers,' and 'Volunteers for Nurses.' The defendants Blair and Addis, with one Harris, with the consent of the consul general, organized the British Friendly Association, and these lists were turned over to Harris, who was in charge of the office of the Association, and who with the knowledge of Blair and Addis opened correspondence with the persons whose names were upon the lists. After Harris left the lists were in the custody of Blair, whose name appeared on one of them under the heading 'Volunteers.' The men who came to the Friendly Association's office were examined as to their physical condition by defendant Addis, who is a physician, and whose name is on the list of 'Volunteers for Nurses.' All the expenses were paid with the money of the British government, furnished through the consul general, who, when he turned the lists over to Harris, accompanied them with the instructions 'to send only British subjects with military training,' 'to make no engagements of any description whatever, to give no pay or advance,' 'to make no solicitation,' 'not to send more than 50 men at a time,' 'to require such proof of British nationality as such men are usually able to give,' 'to give no information as to pay, allotments, etc.,' and 'to examine the men to see if they were physically suitable.' It would be taxing credulity to the utmost to urge that, with the lists and instructions, the defendants did not know that what was sought by the consul general was men who would go to England there to enlist in the military or naval service. They were 'to give no pay or advance.' It is not stated 'pay or advance for what.' They were 'to make no engagements of any description whatever.' It is not stated in the instructions what they were to do in this regard, but they were to examine the men to see if they were suitable, and to send them on, not more than 50 at a time. Evidently, while under the

instructions they could make no engagements, they certainly could come to some understanding with the men that they should be sent forward for some purpose for which, after a physical examination, they were found to be 'suitable.' They were 'to give no information as to pay, allotments,' etc. 'Pay or allotments for what?' The instructions do not state, but the facts show that all British soldiers and seamen receive a daily pay, and may receive pensions and allotments after their service is terminated, and that this was known both by defendants and by men transported. The men, pending and after examination, were kept at boarding and lodging houses until a sufficient number was assembled for 'orderly transportation.' All this was designed, and defendants knew it, to secure men to return to Great Britain and enlist. They examined the men, boarded them, lodged them, transported them in squads to New York, where they expected them to report to the British consul for further examination and further transportation. Defendants knew what they expected the men to do, and the men in turn knew what was expected of them. Defendants, in the language of the stipulation, supposed, presumed, and believed that the men would go to England and there enlist in the military or naval service, and a majority of the men intended to do so. They were furnished board, lodging, and transportation for that reason alone. The offer of defendant was, even though never put into words, 'If you men, having been found, after examination, physically suitable, will go to England and enlist we will furnish you with board and lodging while you are here awaiting examination and transportation, and we will furnish you with transportation to New York and sustenance during the trip.' And this offer the men accepted, by submitting to examination, by accepting board, lodging, sustenance, and transportation, with the intent in the majority of them, at least, to do the thing desired. It would be to look on to the form in utter disregard of the substance to accept as a sufficient response to all these facts the statement that at no time did defendants, or any of them, expressly say in words to any of the men that they should enlist in the service of Great Britain as soldiers, sailors, or marines, just as it would be to regard the form alone, and disregard the substance, to believe, in view of all the facts, that when the consul general turned over to Harris, of the Friendly Association, the lists of so-called 'Volunteers,' with the manifest intention that they should be used, the instructions accompanying them were designed for any other purpose than to secure here men to go beyond the limits of the United States for enlistment, without appearing to have violated the law, to accomplish in fact the results against which our statute is directed, and to do the things therein forbidden without appearing to do so. While, therefore, it may be true that they believed they were acting within the law, I am of the opinion, for the reasons stated, that some of the defendants did enter into the conspiracy as charged in the indictment, and that defendant Blair, for the purpose of effecting the object thereof, committed some of the overt acts charged."

The judgment is reversed, and the case remanded for a new trial.