CHARLES C. MITCHELL & *al. versus* THOMAS CUNNINGHAM.

Confession, made by the owner of a vessel, upon record in the Courts of the United States, that the vessel has been forfeited for a breach of the navigation laws, is not conclusive against him of that fact. It may have been made under a mistake of the facts or of the law.

After a seizure of the vessel and cargo for such a supposed breach of the law, and after such confession by the owner, and while the property is in custody of the law under the seizure, he still has such an interest as would enable him to make a valid mortgage to some of his creditors, as against other creditors, who should attach after final restoration of the property by the government.

REPLEVIN for goods, which the defendant, sheriff of the county of Lincoln, had attached as the property of one Barnes.

Barnes was owner and commander of the schooner Palo Alto, which was under a fishing license. He purchased of the plaintiffs in Portland, the goods replevied in this suit, and transported them in the schooner to his residence in Wiscasset. The vessel, with the goods, was seized and libeled on the ground that she had been employed in a business not justified by the fishing license. Afterwards, on the 23d July, 1847, Barnes filed in the U. S. District Court a petition, admitting

the forfeiture, and praying that it might be remitted. Due proceedings being had, the forfeiture was remitted on the 19th of September, 1847, under the hand and seal of the secretary of the treasury.

Afterwards the secretary revoked the remittitur, and ordered that it should be returned to him, and that the property should be withheld from Barnes.

Barnes insisted upon having the property restored, and denied that the secretary could revoke the remittitur. The question was presented before the District Judge, who decided that the goods should be restored to Barnes, and that the libel should be dismissed, and that a writ of restitution should issue, which was accordingly issued. From this decree and these proceedings the United States appealed to the Circuit Court of the United States, where, upon a full hearing, the decree of the District Court was affirmed.

On the 24th July, 1847, while the goods were in custody of the law, under the seizure by the collector as above named, Barnes mortgaged the goods to the plaintiffs to secure their purchase money. And the mortgage was duly recorded.

*Henry Ingalls,* called for defendant, testified that he made the writs, and was present when the attachments were made; that the goods were stored in the lower story of the custom house; that the collector unlocked the door and went into the room where they were stored; that deputy marshal, Nichols, having a writ of restitution, followed him; that the sheriff, having the writs, followed him, and the witness followed the sheriff. The collector said to the deputy marshal, "here are the goods;" the sheriff then said, "I attach these goods as the property of Barnes," then standing among the goods and touching some of them. Some conversation then took place between Barnes, (who was present,) and the deputy marshal, who said to him, "I deliver you these goods according to my precept." The sheriff then said, "I attach these goods again; I attached them before a delivery, and I now attach them again after a delivery." This took place on December 22, 1847. This action of trover was brought December 24, 1847.

It appeared that the goods, from the time of seizure to the time of such delivery, had remained locked up in that place, in the custody of the collector.

The case was taken from the jury by consent, and submitted to the decision of the Court, with authority to enter judgment, by default or nonsuit, as the rights of the parties may require.

*Fessenden, Deblois & Fessenden, Willis* and *Fessenden,* for plaintiffs. Argument by *Deblois,* furnished in writing.

There was, at no time, such a forfeiture as precluded Barnes from making a valid mortgage of the goods. *Fire department* v. *Kip,* 10 Wendell, 266. " A forfeiture, &c. " The right to the property does not, *ipso facto,* vest in the party to whom the property is given, but a proceeding in a court at law must be had, adjudging the forfeiture and declaring the party entitled to the property." *Mars,* 1 Gall. 192 to 198 ; *Jones* v. *Ashhurst,* Skinner, 357 ; *U. States* v. *Grundy,* 3 Cranch, 337 ; *Margaretta,* 2 Gall. 516. In this last case it is settled that, " until *final judgment,* no part of the forfeiture vests absolutely in the collector ; but after final judgment, his share vests absolutely and cannot be remitted. *U. States* v. *Palo Alto,* Circuit Court U. S. October term, 1848, and the cases there cited.

At common law, it cannot be disputed that the " forfeiture relates to *the conviction* and not to the *commission* of the offence." Bac. Abr. Forfeiture, D ; Com. Dig. Forfeiture, B. 6 ; 4 Black. Com. 387. " Goods and chattels are forfeited by *conviction.*" 4 Hawk. P. C. 481.

And in the case of the Mars, just cited, Judge Story says, " I take the rule to be universally true, that until the offence is ascertained by *conviction* and attainder, no title vests in the sovereign." And very shortly after he adds, " that the crown hath but a mere possibility, which in no wise *restrains* the exercise of ownership over the property." See also 4 Black. Com. 382.

Again, in the case of the Mars, Judge Story says, " for all purposes of alienation and sale, therefore, the property in the

goods and chattels remains in the owner, notwithstanding the commission of an offence, subjecting it to forfeiture, and consequently he may convey *a good title against every person but the crown*, and against the crown also, unless in cases where the anterior relation applies."

The common law of forfeiture prevails, where the United States have not provided otherwise.

2. If the goods were forfeited at the time of the mortgage, the remission of the forfeiture revested the title immediately in Barnes, and through him, (in virtue of implied covenants,) in Barnes's mortgagees.   *Somes* v. *Skinner*, 3 Pick. 52 ; *Dorsey* v. *Garraway*, 2 Harr. & J. 402 ; *McCalla* v. *Bullock*, 2 Bibb, 288 ; *Ash* v. *Savage*, 5 N. H. 545.

3. If the property in the goods was forfeited by any of said proceedings in said courts, or by the commission of an act by Barnes forfeiting said goods, or by his confession of forfeiture, for the purpose of making his application to the secretary of the treasury for a remittitur ; the judgment of the Circuit Court, rendered in said case, by its own proper vigor, *revested* the title in Barnes to the goods, and by the same act, in Mitchell & Co. before, *and without*, any writ of restitution or any service of the same, such writ only operating to give Barnes, or those who claimed under him, the actual possession of the goods and the fruits of the judgment.   *Palo Alto*, Circuit Court, U. S., Maine, Oct. Term, 1848.

" The forfeiture being waived by the proper authority, the original *title* and *rights* under it *revived without the warrant or its execution.*   The act of the secretary is the gist of the remission, and not the act of the Court."   *United States* v. *Morris*, 10 Wheaton, 296.

Again, in the Palo Alto : —

" The judgment and warrant were only the proper modes of restoring the possession, as that possession was in the officers of the law.   But the title was not in them, and those officers could not restore the title.   It is a mere custody in the Court until an adjudication of forfeiture and condemnation.   *Jennings* v. *Carson*, 4 Cranch, 2 ; *Burk* v. *Trevett*, 1 Mason, 96 ;

*Skinner* v. *Maybery & al.* 2 Wheat. 1 ; *Brig Ann,* 9 Cranch, 289. Such remission may be made at any time until the pro-ceeds, *after judgment and sale,* are actually paid over. *Mc-Lane* v. *United States,* 6 Peters, 423 ; *United States* v. *Morris,* 10 Wheat. 246.

The case of *Ann,* 9 Cranch, 289. After a seizure and voluntary relinquishment, all prior rights acquired by the seizure *are purged away.* Much more would this be the case where there is a remittitur. Judge WOODBURY says, in the Palo Alto, " the remission is a *waiver* of the forfeiture, dispenses with it and is *per se* complete." He also goes on to say, " that whether the *act of remitting* by the secretary, be judicial, semi-judicial or ministerial, having been once exercised on condition, *which condition was performed,* the secretary has not right to reconsider and withdraw that remittitur." Further, he says, " actual redelivery of the property by the officers, appears not to be necessary to revest the title, and it would seem to be sufficient, merely for the secretary to make a remission and communicate it to the claimant."

4. At the time Barnes executed the mortgage to Mitchell & Co., he was the true and lawful owner of the goods, as to all the world except the United States, or those claiming immediately under the United States. Neither the creditors of Barnes, nor the defendant, (not acting under the authority of the United States, nor claiming title under the United States,) can avail themselves of a forfeiture of the goods to the United States. There is *no privity,* between the defendant, or those whom he represents, and the United States. *McCalla* v. *Bullock,* 2 Bibb, 288 ; *Bullock* v. *Williams,* 16 Pick. 33 ; *Smith* v. *Smith,* 24 Maine, 555 ; *Forbes* v. *Parker,* 16 Pick. 462.

5. The effect of the remission of the forfeiture was simply to place the title to the goods in the same situation, that they would have been in, had there been no forfeiture, or seizure for a forfeiture.

6. The Palo Alto was not subject to a forfeiture, *she having committed no. offence* against the revenue laws of the United States.

**7.** His *confession of forfeiture*, accompanied by an application to the secretary of the treasury for a remittitur, and alleging that the forfeiture was not incurred through "willful negligence or any intention of fraud," did not of itself make the vessel forfeit. Such a confession of forfeiture in such collateral proceedings, and with the averment aforesaid, *is not an admission of forfeiture.*

**8.** Whatever may have been the state of the title of Barnes and however the same title may have been affected prior to Sept. 30, 1847, at that time all forfeitures were remitted by the District Court, and a warrant of restoration issued, on the performance of the *condition* ordered by the secretary of the treasury, and on said 30th of Sept. the whole title was *restored, revested* in Barnes. This was after the mortgage and long before the attachment. This state of things was judicially determined in this case in the appellate court. On the 30th of Sept. then, at all events, Mitchell & Co's title under the mortgage was perfected. The pretended claim by attachment did not present itself until Dec. 22d after.

*Shepley* and *Dana,* for defendant, submitted the following brief.

1. The bill of sale from Barnes to the plaintiffs conveyed to them no interest in the property. Barnes had at that time no interest to convey. He had previously confessed a forfeiture to the United States, and the title was then in the United States.

2. The bill of sale being without any covenants of warranty, did not operate to convey any title, which Barnes *might subsequently acquire,* but only such as he *then had* in the property.

3. The remittitur was a reconveyance of the property from the United States to Barnes, not to Mitchell. It operated to vest the property in Barnes. The writ of restitution directed the officer to restore the property to *Barnes.* Until the service of the writ of restitution, neither Barnes nor Mitchell had any title in the property. After that was served, the property, being *revested* in *Barnes,* it became liable to attachment as his,

unless it passed to Mitchell by virtue of the prior conveyance, and that it could not do, that being a mere release without covenants of warranty.

WELLS, J. — By the common law, the forfeiture of lands has relation to the time of the offence committed, so as to avoid all subsequent sales and incumbrances. But the forfeiture of goods and chattels, by the common law has no relation backwards; so that those only, which a man has at the time of conviction, shall be forfeited.

The distinction grows out of the fluctuating nature of personal property, and of its rapid passage from one person to another. 4 Black. Com. 387.

It was decided in the case of the brig Mars, 1 Gall. 191, that a *bona fide* purchaser, without notice, is protected against an antecedent forfeiture to the United States. But this decision was overruled in the same case, 8 Cranch, 417, and it was held, that a forfeiture would overreach such sale. It was there considered, that the Act of Congress had provided a different rule, in relation to goods and chattels from that of the common law; that the forfeiture took place upon the commission of the offence; and that it was not in the power of an offender to purge it by a sale. *United States* v. *Nineteen hundred and sixty bags of Coffee.* 8 Cranch, 398.

Where a forfeiture is given by statute, the thing forfeited may vest immediately, or on the performance of some particular act, according to the intention of the Legislature. This must depend upon the construction of the statute. *United States* v. *Grundy & al.* 3 Cranch, 337 ; *Wilkins* v. *Despard,* 5 T. R. 112.

When a vessel or goods have become forfeited by a breach of the revenue laws, they must generally be libeled and the suit prosecuted in the Court, having cognizance thereof. The mode of proceeding to final judgment of condemnation or restoration is prescribed by law, for the alleged forfeiture in the present case. Acts of Congress of Feb. 18, 1793, c. 52, § 6 and 35, and of Aug. 4, 1790, c. 62, § 67.

Mitchell *v.* Cunningham.

Although the liability to forfeiture takes place upon the commission of the offence, the title of the government, when goods are required to be libeled, does not become perfected until there is a judgment of condemnation.  *The Margaretta,* 2 Gall. 522 ; *United States* v. *Palo Alto,* 3 Wood. & Minot.

Where the right of a party depends upon its establishment in a court of record, by a prosecution directed by statute, such right is not attained, unless the prescribed course is followed.  *Fire Department* v. *Kipp,* 10 Wend. 266.

In the present case, the government had an inchoate right to the property, arising from the violation of the law, if such were the fact, and could make that right absolute, if there were no laches in its officers, and the claim were duly prosecuted.

The title cannot therefore be said to be conclusively and entirely fixed by the offence, until the condemnation.  The legal proceedings constitute the only effectual mode of determining whether the forfeiture has accrued.

If such acts have been done, as show the property liable to forfeiture, still the officers making the seizure cannot protect themselves from accountability for it, unless they have duly instituted the proceedings required by law.  As soon as the offence is committed, a foundation is laid for a proceeding *in rem,* and no alienation can deprive the government of the property.

After the libel had been entered in Court, Barnes, the claimant, filed a petition, confessing a forfeiture of the goods, praying for a remission of the same, and denying any intention of violating the law, or any belief, at the time of doing the acts, that they were in violation of it.

But such confession does not necessarily ensure a condemnation ; it is interlocutory.

In the case of the *United States* v. *Morris,* 10 Wheat. 246, it is said, by Johnson, J., that many defences are not only consistent in the claim for remission, but furnish in themselves the best ground for extending the benefit of the act to the party defendant, resisting the suit on the one hand, while

he sues for remission on the other, amount to no more than this, that he denies having violated the law, but if the Court thinks otherwise, he then petitions for grace, on the ground of unaffected mistake.

So also in the case of the *Palo Alto*, it is said by Wood-bury, J. who questions, whether a forfeiture had been really incurred, that rather than enforce a forfeiture in a doubtful case, and where confession of it had been made in a collateral proceeding to obtain a remission, and has been accompanied by a denial of any intent to violate the law, it would be a legitimate exercise of the discretion of the Court, even on the appeal, to permit amendments, so as to enable the claimant to try his rights. Barnes was therefore still at liberty to contest the right of the government to the property; the final determination, in relation to it, depended on the judgment subsequently to be rendered.

A remission was granted by the secretary of the treasury, and notwithstanding an attempt was afterwards made to recall it, it finally took effect, and there was a judgment of restoration, When the property was delivered to the claimant by the deputy marshal, it was attached by the defendant, upon writs in favor of Barnes's creditors.

On the next day after the confession of forfeiture, Barnes made a mortgage of the goods to the plaintiffs, and it was duly recorded. The question presented is, whether Barnes then had such an interest in the property, as would enable him to convey a title to the mortgagees, who were creditors, against other creditors, that caused it to be attached, after its final restoration.

No one can determine whether there would have been a judgment of condemnation, if the confession of forfeiture had not been interposed. That result would have depended upon the opinion of the Court, which had jurisdiction of the case.

We cannot be governed by the intermediate proceedings, but only by the final judgment; legal proceedings were properly instituted, no decree of forfeiture followed, but that of

restoration, by a court of exclusive jurisdiction, over the whole subject of inquiry.

If we should investigate the facts relative to the alleged forfeiture, and should decide that the goods were forfeited, such decision would not place the title in the government, nor affect in any manner that, which has been made in relation to them. The investigation has been closed, and it cannot be overhauled collaterally, and we must regard the property as if no offence had been committed.

Between Barnes and third persons, the property was his, at the time of making the mortgage, subject to the claim of the government. Between him and the government, if there had been an offence creating a forfeiture, a right in the latter to the property was to be consummated only by a prosecution, and a final decree in its favor.

But it is contended, that the property being in the custody of the law, no possession of it could be given to the plaintiffs.

When the mortgage was made, the goods were in the custody of the collector.

Whatever interest Barnes had in the property, he could transfer by a sale. And if he could sell it, subject to the claim of the government, there does not appear to be any reason why he could not mortgage it. If he could make an absolute, he could also a conditional sale. And if it was incapable of delivery, then none was necessary to vest his interest in the purchaser, except a symbolical one. *Whipple* v. *Thayer*, 16 Pick. 25. In that case, the debtor, after the attachment of his property by an officer, made an assignment of it, while it was held under the attachment; subsequently to the assignment, the officer made another attachment of the property in his possession, subject to the first. It was held, that the delivery of the bill of sale, or assignment with an authority to collect, receive and take possession, was such a symbolical delivery, as would pass the general property in the debtor, subject to the first attachment only, and that the officer had no right to hold it under the second.

Vol. xvi. 49

In addition to the delivery of the mortgage by Barnes to the plaintiffs, it was recorded several months before the attachment.

The recording is made by statute, c. 125, § 32, equivalent to a delivery and retention of the possession. And a mortgage of personal property, if recorded, is effectual against third persons, without a formal delivery of it. *Smith* v. *Smith,* 24 Maine, 555.

The statute does not declare what shall make a valid mortgage, but that no mortgage shall be valid, except between the parties, unless possession be delivered to and retained by the mortgagee, or the mortgage is recorded.

If the recording is sufficient evidence of notoriety, when a delivery can be made, there is more necessity of regarding it as sufficient, when a delivery is incapable of being made, as when the property is under attachment, replevied out of the hands of the rightful owner, or held for alleged violations of law, on the ground of forfeiture.

The result is, that Barnes having power to make the mortgage, it being a valid one, and its record constructive notice to all persons, attempting to acquire a title subsequently through him, the plaintiffs are entitled to recover, and a default must be entered.

NOTE. — Upon the announcement of the decision, a suggestion was made of the death of C. C. Mitchell, one of the plaintiffs, and the counsel inquired of the Court how the execution should issue, and requested that authority should be given to the clerk upon the subject. The Court replied that no special authorization was necessary; that the clerk upon receiving evidence that Mitchell was dead, would issue execution in favor of the survivor.

NOTE. — HOWARD, J. having been of counsel in this case, took no part in the decision.